FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP 25 PM 4: 16

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION<br>NO: 00-0252<br>c/w 00-2967<br>c/w 00-3147<br>SECTION "B" (5) |

### MEMORANDUM IN OPPOSITION TO PETITIONERS IN LIMITATION'S MOTION TO DISMISS

NOW INTO COURT, through undersigned counsel, come Aaron Brown, et al. who oppose defendants' Motion to Dismiss Certain Claims against Limitation Petitioners for the reasons set forth in the following Memorandum in Opposition:

As a general overview, claimants urge in opposition to movant's efforts that the dynamics of a putative class action and a limitation action present a case of complex legal texture. The claimants pray that the court remains mindful that the Limitation Action procedure, enacted as a rule of limited liability, prescribed by the Act of 1851 (46 U.S.C.S. Appx. Sec. 182, et seq.), was nothing more than an ancient maritime rule administered in courts of admiralty, and the subject belongs to the department of maritime law. *Goodrich Transportation Co. v. Gagnon* (1888, CC Wis) 36 F. 123. Movants should not be allowed to stand on an antiquated theory of law which has no viable role in the world of today. The theory of Limitations was enacted by 19th Century Congress to promote building ships, to encourage business of navigation, and in that respect, to put the United States on the same footing by enacting the Limitation of

__Fee_____
__Process__
X Dktd BC
__CtRmDep__
Doc. No. 69

Liability Act of 1851. *46 U.S.C.S Appx. Sec. 181 to 189*; *Evansvill & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19, 70, 46 S. Ct. 379 (1926).

As such, and for reasons presented below, claimants pray that their opposition to dismissal of yet unresponsive or allegedly insufficiently responsive Claim Forms be sustained.

### A. <u>Argument</u>

I.  **Claimants failure to receive notice of Claim Forms precluded any opportunity to respond, and deprived them of their rights to due process by failure to give notice of right to file claim.**

The Court issued its Minute Entry on May 24, 2001 attaching a court-approved Claim Form, to be forwarded to 2,399 of the movant/claimants, containing questions to be answered completely and returned directly to the U.S. District Court Clerk's Office, postmarked no later than July 2, 2001. The Claim Form included questions on injuries suffered as a result of the July 28, 1999 spill, length of time suffering injury, and any change of lifestyle as a result of diesel spill. However, approximately 600 claimants never received notice of the Claim Form due to the U.S. Postal Office's inability to complete delivery. Although in many instances the claimants' addresses were affixed to the envelopes, the U.S. Post Office returned the envelopes with the enclosed Claim Forms, stamped with various reasons for the failed delivery, including "no mail receptacle", "not deliverable as addressed", and other grounds to return the items. *Please see Exhibit "A".* Even with knowledge of a physical address, in many instances

observed, the Postal Service declined to deliver the mail. Furthermore, additional delays in the mailing process gave other previously enrolled claimants a period less than 30 days as designed by the court to execute and return their respective Claim Form.

As a result of the U.S. Post Office's inability to complete delivery, the undersigned counsel hand distributed and posted notices dated July 30, 2001 in various geographic locations listing alphabetically all lost claimants. *Exhibit "B"*. In view of the utter lack of notice of this phase of the case proceedings, effectively denying legitimate, previously enrolled claimants' involvement in the case, one cannot reasonably urge that the subject claimants should be dismissed from the case. Dismissal of potential claimants would violate their right to sue and inherent right to due process. In the case of at least the affected 600, notice of their right to continue to participate in the litigation was ineffective or simply not provided.

While not specifically applicable, the court in its discretion may borrow case management principles from class action provisions of the Federal Rules of Civil Procedure. In any class action maintained under the federal rules, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *FRCP 23(c)(2)*. In addition, in determining the manner and form of the notice to be given, the court should consider the interests of the would-be class, the relief requested, the cost of notifying members of the class, *and* the possible prejudice to members who do not receive notice. *Williams v. State*, 350 So.2d 131, 137 (La. 1977); see also *Ellis v.*

*Georgia Pacific Corp.*, 550 So.2d 1310). Although not substantively applicable due to ACBL's legal insulation from statutory class action procedures, movants urge that borrowing a case management approach from class certification procedures would afford claimants proper notice in compliance with due process. Equally, such an approach does no harm to original movants, the petitioners in limitation, as they are in no way prejudiced by the proposed case management approach.

> II. **Claimants failed to acknowledge mental anguish due to "fear and fright".**

The claimants in this case are neither legal nor medical personnel, but laypersons. They remain reasonably unaware that "mental anguish" is as legal, compensable, and legitimate injury. In Louisiana jurisprudence, there is a "sizeable body of state and federal court of appeal decisions under which plaintiffs, who suffer no physical harm contemporaneous with the actionable act or omission, may recover for mental anguish resulting from fear or fright over the plaintiff's own well being..." *Cook and Porter v. Shell Oil Company*, et al., 1993 U.S. Dist. Lexis 6928 citing, *Clomon v. Monroe City School Board*, 572 So.2d 571, 584-85 (La. 1990). Within the narrow context of the Claim Form provided to them, many claimants in this case assumed injury to mean "physical injury", and subsequently may have declined to complain in completing their Claim Forms. The question of whether the impact of what occurred on July 28, 1999 constituted injury to those who have come forward and filed initial claims in response to

the public notice of ACBL in 1999 remains within the privy of the court. Clearly, all claimants, whether having sought medical attention or not, or having ignored completely the threat to the community in St. Charles Parish, would pray that the court, and not the litigants wishing to evade or ignore responsibility to those affected, determine the extent of injury and the measure of appropriate damages, if any.

### III. Dismissal of potential claimants for late filings equally deprives them of a legal right to a remedy before this honorable court.

Following the failed delivery by the U.S. Postal Service, group of nearly 600 claimants remained left out of the claims process. These Claim Forms filtered back to claimant counsels offices over the course of time stretching well beyond the July 2, 2001 deadline. A concerted effort was made thereafter reach all lost claimants; and this effort has located many of those unreachable by the United States Postal Service process. The nearly 600 are identified in the "NOTICE", *Exhibit "B"*. Most Claim Forms returned since July 2, 2001 would be attributable to this hand-to-hand effort.

Claimants urge this honorable court to include the filings of those receiving delayed notice and providing a delayed response. Claimants could not account for the delays; while those responding did so within a reasonable time frame following their notice of the Claim Form process. Moreover, and perhaps determinatively, once again, petitioners in limitation are in no way prejudiced by the delay.

Finally, claimants urge that the delayed returns, even up through the date of this filing, should be included among claims deemed viable by the court. The court goes further to protect the interests of Petitioner in Limitation with the now ongoing detailed discovery responses to be provided on a rolling basis over the next several months. Herein, the movants' interests are protected sufficiently enough that the court should consider dispensing with the initial round of discovery through the Claim Forms, the subject of this Motion. This detailed, personal discovery effort will produce a database on each claimant and allow a thorough evaluation of each claim.

### B. Conclusion and Requested Relief

Claimants in this matter, presently numbering 2,399 and ultimately a group of nearly 4,000, should be heard and should be allowed to assert individual claims. The process initially prescribed by the court has failed the claimants who did not receive notice in time to assure a timely response. Some of the Claim Forms were successfully delivered, and filed with the Clerk's office. Many, however, were not timely received, if at all received, through the court's defined procedures. Only if all claimants who continue to evidence an interest in prosecuting their claims are allowed to proceed, and to participate in the present phase of discovery, with the detailed, one-on-one format of interrogatories and requests for production, are the rights and interest of both petitioners in limitation and claimant/petitioners protected.

Finally, claimants respectfully urge that the court consider whether the Claim Forms remain consequential in light of the more detailed discovery now ordained by the court. Claimants pray that the court should find the Claim Form to be a tool of discovery, as intended, rather than an instrument to deprive claimants' rights.

Claimants pray that this honorable court allow every claimant who has filed a Claim Form, even up to this date, to proceed to the next phase of the discovery.

Respectfully submitted,

THE WILLARD FIRM

WALTER I. WILLARD (Bar No. 2185)
Deer Park, Suite 3F
10555 Lake Forest Blvd.
New Orleans, LA 70127
Telephone No. (504) 244-9922
Telefax No. (504) 244-9921

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum has been served upon all counsel of record by placing a copy of same in the U.S. Mail, postage prepaid on this 25 day of September, 2001.

Walter I. Willard

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**