FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 OCT -3  AM 10: 36

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF AMERICAN                  CIVIL ACTION
COMMERCIAL LINES LLC as
Owner of the Barge LCD 4907                NO. 00-0252
and AMERICAN COMMERCIAL                    c/w 00-2967
BARGE LINE LLC as Charterer and            c/w 00-3147
Operator of the Barge LCD 4907,            SECTION "B"
Praying for Exoneration from and/or
Limitation of Liability                    MAG. (5)

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## REPLY MEMORANDUM ON BEHALF OF PETITIONERS IN LIMITATION

Claimants' "Memorandum in Opposition to Petitioners In Limitation's Motion to

Dismiss" is misleading both factually and legally.  In the following paragraphs, American

Commercial Barge Lines, L.L.C. and American Commercial Barge Line L.L.C. ("Limitation

Petitioners") respond to several claims which are erroneous and/or lack evidentiary support.

N0729831.1

I.

### The Limitation of Liability Act has not been repealed by Congress.

In their opposition memorandum Claimants propose that Limitation Petitioners should not be allowed "to stand on an antiquated theory of law which has no viable rule in the world of today." No argument for refusing to apply the Limitation of Liability Act was set forth by Claimants other than to make a blanket assertion that the Limitation of Shipowner's Liability Act (46 U.S.C. §181, et seq.) (hereafter the "Act") is antiquated and therefore not viable in the modern world. While Claimants may take issue with the viability and purpose of the Act, Congress has not repealed the Act and it remains valid and enforceable. It is difficult to understand how this argument, as specious as it might be, has any relationship to Limitation Petitioners' motion to dismiss.

Throughout Claimants' opposition, Claimants seek to have the Limitation of Liability proceeding handled as a class action ignoring completely the statutory body of law set forth in the Act as well as case law of the Fifth Circuit. Claimants contend that notice was not given to Claimants due to the ineptitude of the Postal Service and because the Court did not direct counsel to give proper notice to Claimants as "would-be class" members under F.R.C.P. 23(c)(2). Counsel simply refuses to accept the substantive and procedural distinction between a limitation of liability case and a potential class action.

It is well-established that class certification cannot be granted in a limitation of liability case because class actions interfere with the concursus contemplated by a limitation

of liability proceeding. In the Complaint and Petition of Lloyd's Leasing Ltd., 902 F.2d 368 (5th Cir. 1990). Notice requirements of a class action and limitation of liability proceeding are different particularly with respect to the fact that limitation of liability proceedings require that each claimant appear individually in order to prosecute their claim. In the Complaint and Petition of Lloyd's Leasing Ltd., 902 F.2d 368 (5th Cir. 1990); see also, F.R.C.P. 23; Supplemental Admiralty and Maritime Claims Rules A, F, and F(4). The Fifth Circuit has established that the entire thrust of Supplemental Admiralty Rule F is that each claimant must appear individually in the proceeding which is obviously inconsistent with a class action such that use of class action procedure is improper when proceedings are governed by the Act. Lloyd's Leasing Ltd. v. Bate, 902 F.2d 368, 370 (5th Cir. 1990); see also Slaven v. BP America, Inc., 190 F.R.D. 649 (C.D. Cal. 2000); Great Lakes Dredge & Dock Company v. City of Chicago, 1996 WL 210081 (N.D. Ill. 1996); Humphreys v. Antillen, 1994 WL 682811 (E.D. La. 1994).

Claimants acknowledge that class action procedures are "not specifically applicable". Claimants further recognize that class action case management and certification procedures are "not substantively applicable". Nevertheless, Claimants request that the Court borrow class action case management principles but offer no reason or argument for such a drastic diversion from firmly established case and statutory law.

The only suggestion in support of such a theory is that treating this limitation action as a class action would in no way prejudice Limitation Petitioner's rights. Limitation

Petitioners have already been prejudiced in this litigation by Claimant's refusal to follow the procedural rules of this court and failing to respond to Court ordered discovery. Further, Limitation Petitioners are still unaware of exactly how many Claimants actually exist in this limitation. Claimants continue to fail to comply with the discovery orders of this Court which prolongs the proceedings and increases costs and expenses unnecessarily. Allowing Claimants to continue to create their own procedures and create their own substantive laws relating to limitation actions is absurd and would deepen the prejudice already suffered by Limitation Petitioners.

II.

### Failure of Claimants to Respond to Discovery for Well Over One Year Is Not the Fault of the Postal Service

Claimants have supplied copies of numerous envelopes arguing individuals did not get timely notice that claim forms must be postmarked and sent to this Honorable Court on or before July 2, 2001 as ordered by the Magistrate. Claimants contend that approximately 600 individuals never received notice that claims forms had to be filed due to the fault of the U.S. Postal Service and attach copies of the faces of the envelopes they contend were returned. Claimants state that the Post Office did not deliver mail because of "inability to complete delivery." Claimants further allege that "Even with knowledge of a physical address in many instances observed, the Postal Service declined to deliver the mail." It is apparently the contention of Claimant that the United States Postal Service, for some unknown reason,

simply refused to deliver the mail. This contention is absurd. Common experience dictates that approximately 600 envelopes will not be returned due to simple Postal Service neglect, error, or unjust refusal to deliver a stamped envelope. The Postal Service usually does not "decline" to deliver mail without reason.

Counsel for Claimants simply failed to provide the Postal Service with accurate and sufficient information so that the mail could be delivered. In support of this contention, Limitation Petitioners note that 205 envelopes copied by Claimants contained improper or nonexistent addresses (and four had no name or address at all). (Exhibit A). Further, at least one envelope was returned for no postage.

Limitation Petitioners have carefully reviewed the copies of alleged returned envelopes attached to Claimants' opposition and have determined that 561 envelopes were returned and 541 of these are Claimants. (See Exhibit B). Twenty are not Claimants and are therefore not parties to the limitation action. (See Exhibit C). Claimants contend that the Postal Service returned envelopes for all of these individuals and therefore, they did not have a chance to respond on time in accordance with the Court's Order. However, **146 of these Claimants actually filed their claim forms on time** despite the returned envelope. (See Exhibit D). Obviously these individuals had ample opportunity to respond and had no difficulty obtaining a copy of the claim form despite the mail service. Further, of the remaining individuals, an additional 87 filed forms but were late. (See Exhibit E). These individuals had notice and access to forms but failed to prosecute their case in a timely

fashion.

Counsel for Claimants offers no explanation, through affidavit or otherwise, which could explain how 146 individuals could comply with the Court's Order on time despite the Postal Services' alleged refusal to cooperate. No proof has been offered that the remaining 308 Claimants did not receive a claim form. (Exhibit F). Given that many claimants had access to the claim forms and over 200 filed a form, 146 timely, it is more likely that the form was received but it was ignored by Claimants. Claimants argument that all of those envelopes returned in the mail represent Claimants who failed to get notice is clearly not credible. No proof of failure to contact non-filing individuals has been offered. All of the claims of the non-filing or late filing Claimants should be dismissed as Claimants have failed to comply with a Court Order which prejudices the right of Limitation Petitioners to discovery in this case and no proof has been offered that these Claimants desire to participate in this action.

III.

### Claimant's Did Not Seek Timely Relief From the Court and Claimant's and Counsel Appear to Be Out of Communication

There is no doubt Claimants' counsel has taken this case on a contingency fee basis. By signing the answer and claim on behalf of the 2,399 Claimants he certifies that he actually represents each individual Claimant. (FRCP 11). The Louisiana Rules of Professional Conduct state that, when a lawyer is engaged by a client on a contingency fee basis, the

N0729831.1                                                        6

contingent fee agreement "shall be in writing and shall state the method by which the fee shall be determined." La.R.P.C. 1.5(8)(c).    In that case, it is difficult to imagine how counsel does not have the names, complete addresses, and phone numbers of his clients. He must have been given an address by his clients or he would not have been able to address the envelopes containing the claim forms. Even a non-lawyer Claimant should realize a need to communicate with counsel regarding basic information as to their whereabouts. Anthony v. Marion County General Hospital, 617 F.2d 1164 (5th Cir. 1980). Counsel has made no effort to obtain contact information for his clients. Counsel has admitted that he has not obtained a copy of the Claim Forms filed by his clients with the Court which contain all pertinent information regarding Claimants addresses and contact information. Instead, counsel has requested that Limitation Petitioners supply him with his own clients' names and addresses which Limitation Petitioners obtained and formatted at great expense from the claim forms.

Counsel has produced no proof through affidavits or otherwise that he took any steps to distribute the claim forms in a timely manner other than mailing claim forms. Counsel further suggests that he "hand distributed and posted notices dated July 30, 2001 in various geographical locations listing alphabetically all lost claimants." This was almost one month after the forms were due. Surely counsel would have had notice of the fact that claim forms were being returned well in advance of July 30, 2001 and in advance of the July 2, 2001 deadline and could have sought relief from this Court at that time.

Counsel could have requested additional time to comply with the Magistrate's Order once envelopes were returned or he could have appealed the Order if counsel considered the time frame for filing forms to be too constricted. No objection to the Magistrate's Order to provide a Claim Form was filed nor was an extension of time within which to file the form requested. Time for such an appeal of the Magistrate's Order or to file a request for an extension has now passed. Months later, difficulties associated with complying with the Magistrate's Order and objections related thereto are untimely and cannot be entertained by this Court.

IV.

### Ignorance Is No Defense When Counsel Suggests To Claimants That "Injury" Includes "Fear or Fright"

Counsel contends that the Claimants who stated on their claim forms that they did not have an injury did not understand that fear or fright would constitute an injury. However, counsel's letter forwarding the claim forms to his clients explains that fear and fright are potential injuries in this case and suggests to the Claimant that they may in fact have suffered such injury. That letter reads as follows:

> In further pursuit of your claims, it will be necessary that you fill out the attached short two-page form, one form per individual, adult or child. This will provide the defendants with the extent of the injury caused by the diesel spill into the Mississippi River. You may have had diarrhea, nausea, headaches, breathing problems, etc. as a result **or simply fear or fright** of effects of diesel oil in our drinking water.

*See* Willard letter of May 29, 2001 (attached hereto as Exhibit G).

The letter is suggestive and instructive as to the injuries Claimants may have suffered. It is absurd to claim ignorance when counsel more than "hinted" what injuries should be listed on the claim form. No affidavits or other proof have been filed indicating that any claimant was actually confused as to what the term "injury" means. Counsel also suggests that if Claimants "ignored completely the threat to the community in St. Charles Parish" and did not suffer fear or fright, the Court still has the ability to determine damages and the extent of any potential injury even though the individuals themselves do not know that they suffered. In order to compensate an individual for an injury, and actual injury must be sustained. Claimants declare they have no injury and therefore, they should be dismissed. In fact, the claims on behalf of these claimants should never have been filed. Counsel for Claimants knowingly continues to proceed against Limitation Petitioners with baseless, non-compensable claims.

## Conclusion

Accordingly, Limitation Petitioners maintain that the Claimants which were the subject of the Motion to Dismiss Certain Claims Against Limitation Petitioners must be dismissed. No credible argument, evidence or proof has been offered upon which this court can maintain such actions. The contumacious behavior of Claimants warrants dismissal. Smith v. Smith, 145 F.3d 335 (5th Cir. 1998). Claimants conduct has caused an unacceptable

amount of delay in this case and has prejudiced the rights of Limitation Petitioners.

Respectfully submitted,

GLENN G. GOODIER (#06130)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, Suite 4800
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Attorney for Defendants,
American Commercial Lines L.L.C. and
American Commercial Barge Line L.L.C.


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this 28th day of September, 2001.

GLENN G. GOODIER

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED