


**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF AMERICAN COMMERCIAL LINES LLC, as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE LLC, as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability**

**CIVIL ACTION**

**NO. 00-0252**
**c/w 00-2967**
**c/w 00-3147**

**SECTION "N" (5)**

* * * * * * *

**MOTION IN LIMINE REGARDING TESTIMONY OF DR. HENRY M. EVANS, JR.**

Defendants, St. Charles Parish and Orion Refining Corporation[1], bring this Motion in Limine to exclude and/or otherwise limit the testimony of Dr. Henry M. Evans, Jr. at the class certification hearing in this matter. Dr. Evans' opinions are not based on the valid scientific theories and should be excluded. Alternatively, if Dr. Evans is allowed to testify, his opinions should be limited to those previously provided to defendants and expressed in his deposition.

[1] Undersigned counsel has conferred with counsel for Orion, who requested that this pleading be submitted on behalf of both defendants.



**Respectfully submitted:**

**ALAN A. ZAUNBRECHER (#13783)**
**BRETT M. BOLLINGER (#24303)**
**3850 N. Causeway Boulevard**
**Lakeway II - Suite 1070**
**Metairie, Louisiana 70002**
**(504) 833-7300**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY that a copy of the foregoing pleading has been served on all counsel of record by depositing same in the United States Mail, properly addressed and postage prepaid, this 2 day of April, 2001.**

**BRETT M. BOLLINGER**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF AMERICAN COMMERCIAL LINES LLC, as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE LLC, as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability**

**CIVIL ACTION**

**NO. 00-0252**
**c/w 00-2967**
**c/w 00-3147**

**SECTION "N" (5)**

* * * * * * *

**NOTICE OF HEARING**

Glenn G. Goodier, Esq.
201 St. Charles Avenue
Suite 4800
New Orleans, LA 70170-5100

Sidney J. Hardy, Esq.
3445 N. Causeway Boulevard
Suite 800
Metairie, LA 70002

Randal L. Gaines, Esq.
311 Devon
LaPlace, LA 70068

Walter Willard, Esq.
Deer Park, Suite 3A
10555 Lake Forest Boulevard
New Orleans, LA 70127

PLEASE TAKE NOTICE that the foregoing Motion in Limine Regarding Testimony of Dr. Henry M. Evans, Jr. filed by defendant, St. Charles Parish, will be brought on for hearing in the United States District Courthouse, 500 Camp Street, New Orleans, Louisiana, on the 17th day of April, 2002, beginning at 9:30 a.m., or as soon thereafter as counsel may be heard.

**Respectfully submitted:**

**ALAN A. ZAUNBRECHER (#13783)**
**BRETT M. BOLLINGER (#24303)**
**3850 N. Causeway Boulevard**
**Lakeway II - Suite 1070**
**Metairie, Louisiana 70002**
**(504) 833-7300**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF AMERICAN COMMERCIAL LINES LLC, as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE LLC, as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability**

**CIVIL ACTION**

**NO. 00-0252**
**c/w 00-2967**
**c/w 00-3147**

**SECTION "N" (5)**

* * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE REGARDING TESTIMONY OF DR. HENRY M. EVANS, JR.**

MAY IT PLEASE THE COURT:

A class certification hearing in this matter is scheduled for April 24, 2002. In preparation for this class certification hearing, defendants have propounded discovery and taken numerous depositions to ascertain the evidence and witnesses to be presented by plaintiffs and to properly prepare the defense in this matter. As detailed below, the deposition of Dr. Henry M. Evans, Jr. was taken on January 18, 2002. Dr. Evans' opinions regarding medical causation in this matter will not assist the Trier of Fact and are not based on valid, testable scientific methods, and, therefore, do not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, *509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993)*. Alternatively, if Dr. Evans is allowed to testify, his testimony should be restricted to those opinions previously provided to defendants and discussed in his deposition.

**Dr. Evans' Testimony Should be Excluded Under Rule 702 and *Daubert***

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the Trier of Fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

When deciding whether to allow expert testimony, the trial judge must determine whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert, 509 U.S. 593; Tanner v. Westbrook, 174 F.3d 542 (5th Cir. 1999); Skidmore v. Precision Printing and Packaging, Inc., 188 F.3d 606 (5th Cir. 1999).* Factors to be considered in making this determination include whether the theory or technique can or has been tested; whether the theory or technique has been subjected to peer review and publication; the known or potential error rate; and whether the theory or technique is generally accepted in the scientific community. *Id.*

The testimony of Dr. Evans is simply based on unsupported speculation rather than valid scientific theories or techniques. The lawsuit in question involves a claim by several residents of St. Charles Parish that they became ill after drinking water that contained a small amount of diesel fuel. Dr. Evans was retained by plaintiff's counsel to provide an opinion with regard to whether the symptoms experienced by the plaintiffs were caused by their exposure to contaminated drinking water. Dr. Evans testified in his deposition that the contamination in the water would need to be above a certain threshold level in order to cause any of the symptoms. However, Dr. Evans admitted that he did not know this threshold level of contamination. Without knowing this threshold amount of contamination, his opinion is, essentially, useless. Specifically, Dr. Evans was questioned as follows:

Q. I'm asking you at this time, do you have any other opinion? You've told us that you were told that 4,000 people complained. Do you have any opinion at this point as to any relation between exposure to diesel and anybody else, symptoms – the symptoms experienced by anybody else other than the two people we've already talked about?

A. Yes. My opinion would be that if the number of people involved did develop symptoms in the aftermath of sufficient exposure or perceived exposure, that in the absence of any other contributory factors or triggers, and if the history as related by those individuals is true and correct, and if there's apparent substantial exposure, that it would be my opinion that more likely than not that the constellation of the types of symptoms that we've enumerated here today would be causally related to the diesel fuel exposure.

Q. Just to clarify, you seem to qualify your own opinions by saying if there was an apparent substantial exposure. If I understand you correctly, you mean an exposure above the limits that we talked about before as far as parts per million that wouldn't affect a normal person. Is that what you're talking about?

A. Right.

...

Q. And at this time, we don't know what that level is?

A. PME's. Right. Permissible exposure – limit of exposure. We don't know what that is.

(Exhibit A, deposition of Dr. Henry Evans, p.117, l.22 - p.119, l.7).

Without knowing the threshold level of contamination, Dr. Evans' opinion provides no assistance in this matter. Defendants will not dispute, for purposes of this argument, that diesel, as well as numerous other chemicals, can cause nausea and other symptoms at high enough concentration levels. Dr. Evans testifies that he does not know what concentration level is sufficient to cause any of the symptoms. Additionally, he testifies that he does not know if the water in the St. Charles Parish water distribution system contained a high enough concentration to cause any of the symptoms. This testimony of Dr. Evans does not even pass the Rule 702's threshold requirement of assisting the Trier

of Fact in understanding the evidence. If defendants will not dispute that diesel may cause nausea and other symptoms at some level of concentration and Dr. Evans' testimony is that diesel will cause nausea and other symptoms at some level of concentration then his testimony does not assist the Trier of Fact and should be excluded under Rule 702.

Furthermore, if the Court were to allow Dr. Evans' testimony, the Court must consider the validity or testability of his theories. In his deposition, Dr. Evans was asked about the levels of diesel contamination.

> Q. Is it your opinion that there is a level of diesel/water concentration below which exposure to that – you know, to the mix, would not cause harm to the average human being?
>
> A. That would be my feeling, yes.
>
> Q. Okay. Do you have an opinion as to what the level is?
>
> A. I don't have an opinion as to what the level is at this time.

(Deposition of Dr. Evans, p.50, ll.16-24).

Dr. Evans admits that there are tests and reference materials that discuss the minimum level of diesel contamination necessary to cause harm. However, he cannot provide these levels or any reference materials discussing these levels. Additionally, he has not conducted any tests to determine these levels for himself. Dr. Evans' opinions simply have no reliable basis. It does not meet any of the *Daubert* standards. It cannot be tested, it has not been subjected to peer review, he provides no error rate, and his opinion is not generally accepted. Dr. Evans actually admits that his opinions do not meet the *Daubert* standards by saying that there are reference materials and tests to determine the necessary threshold level of diesel contamination, but that he has not reviewed these materials or conducted any tests. This testimony of Dr. Evans, therefore, also fails under the *Daubert* standards.

**If Allowed to Testify, Dr. Evans' Testimony Must Be Limited**

Federal courts have inherent powers necessary to achieve the orderly and expeditious disposition of their dockets. Natural Gas Pipeline Co. v. Energy Gathering, Inc., *86 F.3d 464 (5th Cir. 1996)*. In preparation for the class certification hearing in this matter, on July 17, 2001, defendants propounded Interrogatories and Request for Production of Documents specifically directed at the class certification issues in this case. On August 10, 2001, plaintiffs provided answers to these discovery requests. The answers provided by plaintiffs were used as a basis for preparing the defense to plaintiffs' proposed class certification. These responses were also used to conduct further discovery to fully explore plaintiffs' case. With regard to expert witnesses, the discovery asked for the name, address, and field of expertise for each expert plaintiffs intend to call at the class certification hearing. The discovery additionally asked for a summary of the experts' opinions, copies of expert reports, and a list of every case in which the expert has testified. With regard to the request for a summary of the experts' opinions, plaintiff responded, "All witnesses are available for deposition. Any reports will be made available as provided to petitioner." Based on this response, defendants deposed all of plaintiffs' listed experts, including Dr. Evans. The deposition of Dr. Evans was taken on January 18, 2002. Defendants deposed Dr. Evans for several hours and requested all of his opinions with regard to this case. Dr. Evans testified as follows:

> Q. I'm asking you at this time, do you have any other opinion? You've told us that you were told that 4,000 people complained. Do you have any opinion at this point as to any relation between exposure to diesel and anybody else, symptoms – the symptoms experienced by anybody else other than the two people we've already talked about?
>
> A. Yes. My opinion would be that if the number of people involved did develop symptoms in the aftermath of sufficient exposure or perceived exposure, that in the absence of any other contributory factors or triggers, and if the history

as related by those individuals is true and correct, and if there is apparent substantial exposure, that it would be my opinion that more likely than not, that the constellation of the types of symptoms that we've enumerated here today would be causally related to the diesel fuel exposure.

Q. Just to clarify, you seem to qualify your own opinions by saying if there was an apparent substantial exposure. If I understand you correctly, you mean an exposure above the limits that we talked about before – as far as a parts per million that wouldn't affect a normal person. Is that what you're talking about?

A. Right.

Q. Okay.

A. That's PMI.

Q. And at this time we don't know what that level is?

A. PME's. Right. Permissible exposure – limit of exposure. We don't know what that is.

(Exhibit A, Deposition of Dr. Evans, p.117, l.22 - p.119, l.7).

Since the time of Dr. Evans' deposition, defendants have been provided with no new materials regarding his opinion in this matter. Any change in his opinion would require a supplementation of plaintiffs' discovery responses. Defendants have received no such supplementation and, therefore, assume that there has been no change in his opinion. Out of an abundance of caution, defendants request that, if Dr. Evans is allowed to testify, his opinions be restricted to those opinions provided in his January 18, 2002 deposition.

## Conclusion

The opinions expressed by Dr. Evans will not assist the Trier of Fact in this matter. Additionally, his opinions fail to meet the standards set forth in *Daubert*, and therefore, should be excluded under Rule 702. Accordingly, defendants request that the testimony of Dr. Evans be

excluded from the class certification hearing. Alternatively, if the Court allows Dr. Evans to testify, defendants request that his testimony be limited to the opinions he provided at his deposition in this matter.

**Respectfully submitted:**

**ALAN A. ZAUNBRECHER (#13783)**
**BRETT M. BOLLINGER (#24303)**
**3850 N. Causeway Boulevard**
**Lakeway II - Suite 1070**
**Metairie, Louisiana 70002**
**(504) 833-7300**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY that a copy of the foregoing pleading has been served on all counsel of record by depositing same in the United States Mail, properly addressed and postage prepaid, this 2 day of April, 2002.**

**BRETT M. BOLLINGER**



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

-o-0-0-0-o-

IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability

CIVIL ACTION
Case No. 00-0252
c/w 00-2967
c/w 00-3147
Section "B"(5)

Deposition of:

HENRY M. EVANS, JR., M.D.

taken at 2:41 p.m.
on Friday, the 18th day of January, 2002
at the offices of
Henry M. Evans, Jr., M.D.
2500 Louisiana Avenue
New Orleans, Louisiana 70115

2

I-N-D-E-X


Caption . . . . . . . . . . . . . . . . . . . . .1

Index . . . . . . . . . . . . . . . . . . . . . .2

Appearances . . . . . . . . . . . . . . . . . . .3

Agreement of Counsel. . . . . . . . . . . . . . .4

EXAMINATION

By Mr. Hardy. . . . . . . . . . . . . . . . . . .5
By Mr. Goodier. . . . . . . . . . . . . . . . . 57
By Mr. Bollinger. . . . . . . . . . . . . . . .110

Reporter's Certificate. . . . . . . . . . . . .123


-o-0-0-0-o-


EXHIBITS:

Evans 1 . . . . . . . . . . . . . . . . . . . . .9
(Curriculum Vitae)

Evans 2 In Globo. . . . . . . . . . . . . . . .105
(Doctor's File - Patient's Charts & Book Excerpts)


3

APPEARANCES:

REPRESENTING THE PLAINTIFFS:

RANDAL L. GAINES, ESQUIRE
Attorney-at-Law
311 Devon
Laplace, Louisiana 70068

-- AND --

THE WILLARD FIRM
Attorneys-at-Law
Deer Park
Suite 3F
10555 Lake Forest Boulevard
New Orleans, Louisiana 70127
Phone: (504) 244-9922
By: WALTER I. WILLARD, ESQUIRE

REPRESENTING ORION REFINING CORPORATION:

CAMPBELL, McCRANIE, SISTRUNK, ANZELMO & HARDY
Attorneys-at-Law
3445 North Causeway Boulevard
Suite 800
Metairie, Louisiana 70002
Phone: (504) 831-0946
By: SIDNEY J. HARDY, ESQUIRE

REPRESENTING AMERICAN COMMERCIAL LINES, L.L.C. AND AMERICAN COMMERCIAL BARGE LINE, L.L.C.

JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE
Attorneys-at-Law
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Phone: (504) 582-8000
By: MS. GLENN G. GOODIER, ESQUIRE

4

APPEARANCES (Cont'd):

REPRESENTING ST. CHARLES PARISH:

LAW OFFICE OF ALAN ZAUNBRECHER
Attorneys-at-Law
3850 North Causeway Boulevard
Suite 1070
Metairie, Louisiana 70002
Phone: (504) 833-7300
By: BRETT M. BOLLINGER, ESQUIRE

REPORTED BY:

GARY J. CURTISS, CCR, RMR
Certified Court Reporter
State of Louisiana

Ex. A

A. To most of them, yes.

400Q. Okay. In this case, we've gone over your opinions just with regard to the two plaintiffs that you looked at. Do you have any other opinion with regard to generally the people in the community? Or anybody else other than the two people you've examined?

A. I wonder, would you clarify your question?

401Q. Certainly.

As I understand your opinion with regard to Mr. Price and Ms. Rainey, as I appreciate your opinion, it's that their symptoms were caused by an exposure to diesel, correct?

A. Yes.

402Q. Okay. As I understand, you have not been asked to render any further opinion as of this point --

A. Correct.

403Q. -- correct?

A. (Nods head affirmatively).

404Q. I'm asking you at this time, do you have any other opinion? You've told us that you were told that 4,000 people complained. Do you have any opinion at this point as to any relation



between exposure to diesel and anybody else, symptoms -- the symptoms experienced by anybody else other than the two people we've already talked about?

A. Yes. My opinion would be that if the number of people involved did develop symptoms in the aftermath of sufficient exposure or perceived exposure, that in the absence of any other contributory factors or triggers, and if the history as related by those individuals is true and correct, and if there's apparent substantial exposure, that it would be my opinion that more likely than not that the constellation of the types of symptoms that we've enumerated here today would be causally related to the diesel fuel exposure.

405Q. Just to clarify, you seem to qualify your own opinions by saying if there was an apparent substantial exposure. If I understand you correctly, you mean an exposure above the limits that we talked about before --

A. (Nods head affirmatively).

406Q. -- as far as a parts per million that wouldn't affect a normal person. Is that what you're talking about?



A. Right.

407Q. Okay.

A. That's PMI.

408Q. And at this time we don't know what that level is?

A. PME's. Right. Permissible exposure -- limit of exposure. We don't know what that is.

409Q. Okay.

A. At least I don't know. Let me say, I don't know.

410Q. Okay. I should have asked. You don't know at this point?

A. Right.

411Q. Okay. One of the patients you saw, Shelly Rainey, told you that she was still experiencing problems that she believed were related to her exposure to diesel. Correct?

A. That's what she said.

412Q. What is your opinion with regard to anything she is still experiencing and its relationship with diesel, any diesel exposure?

A. I think if Ms. Rainey is still having some symptoms at this time, it would be highly -- it would be unlikely and very remote that -- that those symptoms are related to that particular



incident.

413Q. Do you have an opinion of how long the symptoms in a case like this would typically last?

A. Well, certainly, it's not unlikely that -- that these symptoms would last for a week to two weeks.

414Q. After one to two weeks, you would expect any symptoms to have resolved?

A. As a general rule, I would expect for the symptoms to have resolved.

415Q. Okay. Would you expect any sort of residual problems after that?

A. I would not expect for any long-term sequelae to result unless there was substantial exposure in sufficiently high concentrations. And I don't -- and I'm not aware of that.

416Q. You're not aware of that in this case?

A. Yes.

417Q. You have mentioned various things -- and we don't need to go over them in specific detail -- but various symptoms that are caused by the ingestion, the inhalation, or the exposure to diesel being nausea, vomiting, et cetera. The things you testified to earlier.

Isn't it true that those symptoms





UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

-o-0-O-0-o-

IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability

CIVIL ACTION
Case No. 00-0252
c/w 00-2967
c/w 00-3147
Section "B"(5)

Deposition of:

HENRY M. EVANS, JR., M.D.

taken at 2:41 p.m.
on Friday, the 18th day of January, 2002
at the offices of
Henry M. Evans, Jr., M.D.
2500 Louisiana Avenue
New Orleans, Louisiana 70115



I-N-D-E-X


Caption . . . . . . . . . . . . . . . . . . . . .1

Index . . . . . . . . . . . . . . . . . . . . . .2

Appearances . . . . . . . . . . . . . . . . . . .3

Agreement of Counsel. . . . . . . . . . . . . . .4

EXAMINATION

By Mr. Hardy. . . . . . . . . . . . . . . . . . .5
By Mr. Goodier. . . . . . . . . . . . . . . . . 57
By Mr. Bollinger. . . . . . . . . . . . . . . .110

Reporter's Certificate. . . . . . . . . . . . .123


-o-0-O-0-o-


EXHIBITS:

Evans 1 . . . . . . . . . . . . . . . . . . . . .9
(Curriculum Vitae)

Evans 2 In Globo. . . . . . . . . . . . . . . .105
(Doctor's File - Patient's Charts & Book Excerpts)




APPEARANCES:

REPRESENTING THE PLAINTIFFS:

RANDAL L. GAINES, ESQUIRE
Attorney-at-Law
311 Devon
Laplace, Louisiana 70068

-- AND --

THE WILLARD FIRM
Attorneys-at-Law
Deer Park
Suite 3F
10555 Lake Forest Boulevard
New Orleans, Louisiana 70127
Phone: (504) 244-9922
By: WALTER I. WILLARD, ESQUIRE

REPRESENTING ORION REFINING CORPORATION:

CAMPBELL, McCRANIE, SISTRUNK, ANZELMO & HARDY
Attorneys-at-Law
3445 North Causeway Boulevard
Suite 800
Metairie, Louisiana 70002
Phone: (504) 831-0946
By: SIDNEY J. HARDY, ESQUIRE

REPRESENTING AMERICAN COMMERCIAL LINES, L.L.C. AND AMERICAN COMMERCIAL BARGE LINE, L.L.C.

JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE
Attorneys-at-Law
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Phone: (504) 582-8000
By: MS. GLENN G. GOODIER, ESQUIRE



APPEARANCES (Cont'd):

REPRESENTING ST. CHARLES PARISH:

LAW OFFICE OF ALAN ZAUNBRECHER
Attorneys-at-Law
3850 North Causeway Boulevard
Suite 1070
Metairie, Louisiana 70002
Phone: (504) 833-7300
By: BRETT M. BOLLINGER, ESQUIRE

REPORTED BY:

GARY J. CURTISS, CCR, RMR
Certified Court Reporter
State of Louisiana

Ex. B

A. Right.

114Q. -- components in there that might increase the susceptibility to injury.

A. Correct.

115Q. Fair enough?

A. Yes.

116Q. Do you believe, is there a level of concentration, a diesel/water concentration, below which it is your opinion that the average person, the average person, would not suffer injury or irritation as a result of skin exposure?

A. Certainly, there -- there's -- I'm sure that there are some TUL's (sic) or the -- the time limited values that exist for diesel fuel as it does for other -- have -- have been established for other chemicals.

Now, the specific TLV value itself, I'm not -- I don't really know. But I'm sure that those numbers are -- are ready -- readily available. As you know, time length and value means the amount of exposure that the average person can -- can have in the workplace environment over an eight-hour period or a forty-hour work period, work week, without having any ill effects. Okay? And that's the standard



that people use.

117Q. And I don't know if you answered -- you may have answered my question indirectly. Primarily, I was looking for concentration, levels of concentration, of diesel in water --

A. Uh-huh (Indicating an affirmative response).

118Q. -- a level below which the ordinary person would suffer no injury at all as a result of exposure. And I was thinking in terms of parts per million. Like --

A. Yes.

119Q. -- one part per million, ten parts per million, a hundred parts per million. And my question is:

Is it your opinion that there is a level of diesel/water concentration below which exposure to that -- you know, to the mix would not cause harm to the average human being?

A. That would be my feeling, yes.

120Q. Okay. Do you have an opinion as to what that level is?

A. I don't have an opinion as to what the level is at this time.

121Q. Would you believe that -- would you



have an opinion as to a range that that might b whether fifty parts per million or five hundred parts per million or one part per million?

A. I don't have an opinion at this time.

122Q. Okay. What I would like to move on nov is to inhalation or smelling, I guess, diesel fumes.

A. Yes.

123Q. Is it your opinion that a person can suffer ill effects from smelling or inhaling diesel fumes?

A. Absolutely.

124Q. In your opinion, what would be some of the medical problems or physical problems caused in a person as a result of the inhalation of diesel fumes?

A. Well, some of the problems, side-effects and aftereffects, that might result from diesel fuel inhalation include nausea and vomiting, shortness of breath, tokethia (phonetic), so-called, tachycardia or fast beating of the heart, pneumonia or pneumonitis, bronchitis, death.

Now, in addition to that, there are also other kinds of -- of -- of -- of effects,



mutagenic effects. Pregnant ladies from inhalation and so forth, it's well-documented, can result in fetal wastage, can result in aggravation of underlying respiratory disorders, including asthma, recurrent bronchitis, and chronic obstructive pulmonary disease.

125Q. Can you think of any other medical ailments or physical problems that might result from inhalation of diesel fumes?

A. Well, it can also cause neurological symptoms: Headaches, dizziness, seizures, blurred vision.

126Q. Dr. Evans, can you provide me with any bases for your opinion as to these various medical problems which can be caused by inhalation of diesel other than the sources in the texts that you've already cited?

A. No. No. No. But, of course, with regards to -- to inhalation of -- of diesel fuel, or petroleum products in general, the human body is particularly sensitive. As a matter of fact, it's said that it's approximately 140 times that -- that the respiratory system is 140 times more sensitive than is the G.I. tract for symptoms that one would get from ingestion.