```
                                      FILED
                              U.S. DISTRICT COURT
                            EASTERN DISTRICT OF LA

                              2002 APR -2 PM 3:56

                                LORETTA G. WHYTE
                                      CLERK
```

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION<br>NO:   00–0252<br>c/w   00-2967<br>c/w   00-3147<br><br>SECTION "N" (5) |

### ~~JOINT~~ MOTION IN LIMINE, OR ALTERNATIVELY, TO LIMIT TESTIMONY[1]

NOW INTO COURT, come defendants Orion Refining Corporation and St. Charles Parish who respectfully requests that this Honorable Court bar Dr. Andrew J. Englande and Ms. Sharee Rusnak from testifying at the class certification hearing currently scheduled for April 24, 2002, in the instant matter. For reasons set forth in the accompanying Memorandum in Support, the opinions set forth by both purported experts are fatally flawed and irrelevant to these proceedings. In the alternative, to the extent that the Court permits

---

[1] Undersigned counsel has conferred with counsel for St. Charles Parish who consents to the filing of this motion on his client's behalf.



Dr. Englande and Ms. Rusnik to testify in this matter, defendant respectfully requests that their testimony be limited to those facts and opinions set forth in their written reports and at their respective depositions.

Respectfully submitted:

_____
SIDNEY J. HARDY (1938) (T.A.)
RICHARD A. HOUSTON, III (25100)
CAMPBELL, McCRANIE, SISTRUNK,
  ANZELMO & HARDY
3445 N. Causeway Boulevard
Suite 800
Metairie, Louisiana 70002
Telephone: (504) 831-0946
Counsel for Defendant Orion Refining
Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by placing the same in the U.S. Mail, postage prepaid and properly addressed, this 2 day of April, 2002.

_____
Sidney J. Hardy
Richard A. Houston

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION<br>NO:   00–0252<br>c/w   00-2967<br>c/w   00-3147<br><br>SECTION "N" (5) |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that defendant, Orion Refining Corporation ("Orion") will bring on before this Honorable Court, the attached Motion in Limine or Alternatively, to Limit Testimony for hearing on April 17, 2002 at 9:300 a.m. or as soon thereafter as counsel may be heard.

Respectfully submitted:

_[signature]_

SIDNEY J. HARDY (1938)
RICHARD A. HOUSTON (25100)
CAMPBELL, McCRANIE, SISTRUNK,
  ANZELMO & HARDY
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana  70002
Telephone:  (504) 831-0946

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on counsel of record by placing the same in the U.S. Mail, postage prepaid and properly addressed, this 2 day of April, 2002.

　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　SIDNEY J. HARDY
　　　　　　　　　　　　　　　　　　RICHARD A. HOUSTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION<br>NO:   00–0252<br>c/w   00-2967<br>c/w   00-3147<br><br>SECTION "N" (5) |

MEMORANDUM IN SUPPORT

On July 21, 2000 and July 25, 2000, the <u>Brown</u>[2] and <u>Richard</u>[3] petitions respectively were filed in the 29th Judicial District Court for the Parish of St. Charles. Both petitions sought to assert class-action claims against Orion Refining Corporation ("Orion") and St. Charles Parish, for an incident which occurred on or about July 28, 1999, when an unknown quantity of diesel fuel was allegedly spilled while a tanker barge at an Orion Refinery dock on the Mississippi River was being loaded. Plaintiffs allege that this spilled diesel fuel then made its way into the St. Charles Parish water system and was distributed to consumers, thereby causing both physical and emotional injuries.

---

[2]   <u>Aaron Brown et al. v. Orion Refining Corp. et al.</u>, Docket No. 53,737E, 29th JDC.

[3]   <u>Margie Richard et al. v. American Commercial Lines, L.L.C. et al.</u>, Docket No. 53,756E, 29th JDC.

Plaintiffs have retained Dr. Andrew J. Englande and Ms. Sharee Rusnak to assist them in the prosecution of this matter.[4] Englande, an environmental and water resources engineer, presented defendants with his report prior to his deposition. (A copy of his report is attached as Exhibit A.) He was deposed on March 1, 2002. (A copy of his deposition is attached as Exhibit B.) In short, Englande, relying on testing performed in a separate, entirely unconnected litigation, attempted to calculate the amount of diesel fuel which entered into the St. Charles Parish Treatment plant.[5] It is important to note that he made no effort to calculate the amount of diesel fuel which was allegedly delivered via the water system to any of the putative class members.

In her report (Exhibit C) and her deposition testimony (Exhibit D), Rusnak sought to build upon the conclusions of Englande and used his figures to attempt to calculate the amount of actual amount of the components of diesel fuel to which the putative class members were allegedly exposed.

### ADMISSIBLITY OF EXPERT TESTIMONY

The proponent of expert testimony bears the burden of establishing, by a preponderance of the evidence that the testimony will be reliable. Tanner v. Westbrook, 174 F.3d 542 (5th Cir. 1999). Under Daubert v. Merrell Dow Pharmaceuticals, the district court

---

[4] Because Rusnak's opinions rely extensively on the opinions of Englande, defendants have combined the motions in limine for the convenience of the Court.

[5] Because the amount of the spill is still in dispute, he performed his calculations twice, once for a spill of 210 gallons and once for 2795 gallons.

makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue." 509 U.S. 579, 592-93, 113 S.Ct. 2786, 2796 (1993).

In Daubert, the Supreme Court provided a list of factors, such as testing, peer review, error rates, and acceptance of the opinion in the relevant scientific community, that a court may choose to use in determining the reliability of an expert's testimony. Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786. This list of factors is not exclusive and some or all of the factors may not apply to the testimony at issue. Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999). The Fifth Circuit has recognized that these factors are simply the starting point for evaluating proffered testimony. Black v. Food Lion, Inc., 171 F.3d 308, 311 (5th Cir.1999).

This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999). But whether Daubert's suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. Id. at 1174-76 (1999). It is a fact-specific inquiry. Black v. Food Lion, Inc., 171 F.3d 308, 311 (5th Cir.1999). The test of reliability is flexible and bends according to the particular circumstances of the testimony at issue. Kumho Tire, 119 S.Ct. at 1175. The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 119 S.Ct. at 1176. Whatever the test employed, the objective is to ensure the reliability and relevance of the expert testimony. See Black v. Food Lion, Inc., 171 F.3d 308, 311 (5th Cir.1999).

### ENGLANDE'S AND RUSNAK'S OPINIONS ARE NEITHER RELIABLE NOR USEFUL TO THIS PROCEEDINGS

Englande's conclusions, and by extension those of Rusnak, suffer from two very significant flaws which render them unreliable and useless in these proceedings. First, in calculating the amount of diesel fuel which may have entered the St. Charles Parish water treatment plant, Englande hypothesized two different dilution factors, one high and one low, and applied these dilution factors to the various suggested spill sizes. Englande admitted that these dilution factors are the critical figures in his assumptions. (Exhibit B, pg. 55.) From this, he then attempted to calculate the total quantity of diesel fuel which he believed entered the St. Charles treatment plant.

Englande adopted a one one-hundredth dilution factor from testing done by Wink Engineering in an unrelated case involving Mobil Oil in St. Bernard Parish. (Exhibit B, pg. 33-34.) In that Mobil case, Wink Engineering performed a dye test to determine the dilution which would have occurred during a spill in the Mississippi River. (Exhibit B, pg. 16.) However, his deposition testimony makes clear that Englande has almost no information about the Wink Engineering testing other than its conclusion. First, he has not even seen the Wink study itself, but is merely basing his information on it from a deposition taken in that

case. (Exhibit B. pg. 33.) He did not know the flow rate of the River at the time of the Mobil incident, nor did he know the depth of the River at the location of the Mobil spill. (Exhibit B, pg. 19.) Nor could he compare the depth of the water intake in St. Charles Parish treatment plant with the depth of the intake involved in the Mobil spill because he does not know how deep the st. Charles intake is, even though he does acknowledge that this information is important. (Exhibit B. pg. 20.)

Most significantly, all he knew of the substance spilled in the Mobil case is that it is an "oily type material." (Exhibit B. pg. 72.) He simply assumed that the spilled material in the Mobil case was similar to diesel. (Exhibit B, pg 73.) Such an assumption is entirely groundless. The phrase "oily type material" includes a wide range of materials, some of which could act very differently than diesel when spilled into water. Moreover, Englande did not know what chemical was used as a dye. (Exhibit B, pg. 72.)[6] As such, he cannot say with any degree of reliability that it acted as diesel would. Without the information listed above – information Englande did not have – absolutely no faith can be put in the Wink study as a reliable indicator of how the diesel fuel in the instant matter may have acted.

In addition to adopting the one-one hundredth dilution factor from the Wink testing, Englande also performed calculations for a dilution factor of one-tenth. Other than a vague

---

[6] Defendants take no position at this time as to whether the type of dye testing used in the Mobil case is appropriate in this matter. That said, though, Englande, who clearly believed that it is, could easily have performed a similar test. Doing so would potentially have eliminated the numerous unknown variables that make the Wink test entirely unreliable in the context of this incident.

reference to the fact that the spill was allegedly closer to the water intake in the instant matter than in the Mobil incident and that the River contained a "bend" in the area of the St. Charles Parish intake, Englande provided no calculations or scientific justification, either in his deposition or his report, for this much more concentrated dilution factor.[7]

Moreover, not only is his estimate of one-tenth dilution completely devoid of any sound scientific basis, but the assumptions that he makes to allow him to reach such a conclusions are admittedly without any sound basis. Specifically, Englande assumed that the diesel would completely mix in the River. When asked why he made this assumption, Englande candidly admitted that he did so because such an assumption was simply easier than determining how the diesel fuel would actually have behaved in the River:

> Q.  Does diesel fuel float on water?
> A.  There are different portions of the diesel. It's lighter than water, so it will float, but it is also soluble in water, and it also could form an emulsion with water, so there are different phases which complicates this.
> Q.  How much of the diesel that was spilled floated?
> A.  I have no idea. I'm assuming complete mixing.
> Q.  Why do you assume complete mixing?
> A.  Because that's the best that I can come up with at this time. That's unless you did something that actually mirrored exactly what the diesel did, then I don't know how you get another number.
>
> (Exhibit B, pg. 35.)

Englande for purposes of his opinion, made an assumption which would result in the highest possible quantity of fuel entering the system, despite the fact that the assumption is manifestly untrue. As a result, the opinions of Englande concerning the dilution factors are

---

[7] Englande has seen no studies which concluded that the dilution rate of diesel fuel in a body of water is one-tenth. (Exhibit B, pg. 50.)

6

not properly grounded the appropriate scientific methodology and are simply too untrustworthy to be considered at the class certification hearing.

An even more fundamental deficiency with Englande's opinions is that they fail to even attempt to address the fundamental issue in this litigation – how much diesel fuel, if any, actually reached the putative class members. Englande candidly admits that he has not even attempted to make such a calculation:

> Q. Were you asked to estimate the quantity and concentration of diesel fuel at any particular location of the water system? And the water system includes, that I'm speaking of, starts at the intake and ends at the last faucet.
>
> A. What I – No. What I was – I wasn't – What I considered my job, I guess, is to look at the impact until it gets through the storage into the distribution system.
>
> Once it gets in the distribution system, I have absolutely no – I couldn't I wouldn't try to estimate what happens with all the complexities in there, so this paper – and what I've done is to look at the probability of what happened as a result of the spill as that material found its way through the water treatment plant and into the storage tanks and then from there into the distribution system.
>
> Q. I take it from that statement that you have made no calculations or rendered any opinions as to how much diesel actually got into the distribution – at any particular point in the distribution system?
>
> A. Only from the coming out of the storage tanks into the distribution system.
>
> Q. You have not – Am I correct that you've not made any calculations as to the amount of diesel that might have been in the water of any particular customer downline of the treatment plant?
>
> A. That's correct.
> (Exhibit B, pg. 30-31.)

Englande's failure to even attempt to calculate the amount of diesel fuel which may have reached the putative class members renders his opinions absolutely worthless. Without that calculation, his opinions in no way assist the Court in determining whether class certification is appropriate. At class certification, plaintiffs must establish that the (1) the class is so numerous that joinder is impracticable, (2) questions of law and fact predominate, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class. F.R.C.P. art 23(a). Because Englande cannot opine as to the amount of diesel fuel which actually reached anyone, his opinions simply do not assist in determining whether any of these criteria are met. For these reasons, Englande's testimony should not be allowed at the class certification hearing.

## RUSNAK'S TESTIMONY SHOULD ALSO BE EXCLUDED FROM THE CLASS CERTIFICATION HEARING

The opinions of Rusnak, which are entirely based on the opinions of Englande and attempt to build on his work to establish that the putative class members were exposed to dangerous levels of contaminants, must also be excluded. A review of her report demonstrates that Rusnak simply took the estimates presented by Englande and attempted to calculate how much of the given components of diesel fuel to which each putative class member would have been exposed. Rusnak's deposition demonstrates that she fatally misunderstood the nature of Englande's actual calculations:

Q. Were you simply called upon to assume that the amount of the concentrations

8

>   in the storage reservoirs were the same that actually reached the consumer?
>
>   . . .
>
>   A.  These are the numbers that I used to come up with what I believe went to the public, and this is what Dr. England [sic] believes went out to the public, and I used these numbers to come up with water quality standards and if they were above them.
>
> Exhibit D, pg. 36.)

However, as set forth above, Englande made no effort to calculate the concentration of diesel fuel that may have actually reached an end user. Thus, Rusnak is simply misapplying England's calculations, which are severely suspect in their own right. Allowing Rusnak to testify at class certification will only create confusion and will in no way assist the Court in determining whether the criteria for class certification have been met.

Not only are Rusnak's calculations based on a flawed understanding of Englande's work, but she also attempts to apply improper standards in order to reach the conclusion that putative class members were exposed to harmful levels of diesel fuel components. Specifically, on page four of her report (Exhibit C), Rusnak repeatedly uses drinking water standards adopted by the states of Kansas and Maine. Defendants respectfully suggest that such standards have absolutely no bearing on this litigation. Obviously, the spill did not take place in either of those states, nor did the consumption of any of the allegedly tainted drinking water. The introduction of those irrelevant standards is simply an effort on the part of plaintiffs create liability where none exists.

For the reasons set forth above, defendants Orion Refining Corporation and St. Charles Parish respectfully request that this Honorable Court bar Andrew J. Englande and

Sharee Major Rusnak from testifying at the class certification hearing.

## ENGLANDE AND RUSNAK SHOULD NOT BE ALLOWED TO EXPAND THEIR TESTIMONY

Defendants took the depositions of both Englande and Rusnak in order to understand the full extent of their testimony which would be offered at class certification. Obviously, this is necessary so that defendants can properly prepare countervailing evidence and arguments to rebut the opinions of plaintiffs' experts. Nevertheless, despite defendants efforts to obtain a final, complete explanation of all of the opinions of Englande and Rusnak, both experts suggested at their depositions that they had additional work to do. (Deposition of Englande, Exhibit B, pg. 16; deposition of Rusnak, Exhibit D, pg. 25-26.)[8]

Allowing plaintiffs' experts to modify their opinions at the class certification hearing would create substantial unfair prejudice to defendants. Orion and St. Charles Parish would have no opportunity to prepare a response or present contradictory evidence or testimony. Permitting plaintiffs' experts to change their opinions at that time would completely undercut the very purpose of the discovery deposition – to allow parties to obtain information about its opponent's case and present a considered response. Under the circumstances, and in the event Englande and Rusnak are permitted to testify at the class certification hearing, defendants Orion Refining Corporation and St. Charles Parish request that the Court prevent them from expending their testimony beyond the scope set forth in their respective expert

---

[8] After each comment by plaintiffs' experts suggesting that their opinions may change, defendants put their objection on the record.

reports and depositions.

Respectfully submitted:

*[signature]*

SIDNEY J. HARDY (1938) (T.A.)
RICHARD A. HOUSTON, III (25100)
CAMPBELL, McCRANIE, SISTRUNK,
   ANZELMO & HARDY
3445 N. Causeway Boulevard
Suite 800
Metairie, Louisiana 70002
Telephone: (504) 831-0946
Counsel for Defendant Orion Refining
Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by placing the same in the U.S. Mail, postage prepaid and properly addressed, this 2 day of April, 2002.

*[signature]*

Sidney J. Hardy
Richard A. Houston

11