FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2002 APR -8 PM 12: 47
LORETTA G. WHYTE
CLERK

**MINUTE ENTRY**
**ENGELHARDT, J.**
**APRIL 8, 2002**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE LLC as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability** | **CIVIL ACTION NO. 00-252 c/w 00-2967 c/w 00-3147 SECTION: "N"** |

Before the Court is a Motion to Dismiss filed on behalf of the defendant Orion Refining Corporation's ("Orion") pursuant to Fed.R.Civ. Proc. 12(b)(6), seeking dismissal of all claims under the general maritime law. The defendant removed claimants' state court petitions[1] asserting class action claims against Orion,

[1] *Aaron Brown, et al. v. Orion Refining Corp., et al*, Docket No. 53,737E, Twenty-Ninth Judicial District Court for the Parish of St. Charles [USDC/EDLA Dkt.# 00cv3147 "N"]; *Margie Richard, et al, v. American Commercial Lines LLC, et al*, Docket No. 53,756, Twenty-Ninth Judicial District Court for the Parish of St. Charles [USDC/EDLA Dkt.# 00cv2967 "N"].

DATE OF ENTRY
APR 9 2002

Doc.No. 171

*inter alia*, pursuant to the Admiralty Extension Act ("AEA") 46 U.S.C. § 740.[2]  The claims of the putative class claimants in both of the consolidated class action proceedings arise out of an incident which occurred on or about July 28, 1999, when an unknown quantity of diesel fuel was allegedly spilled during loading operations at Orion Refinery's dock on the Mississippi River, involving a tanker barge (Barge LCD 4907) owned and operated by Petitioners-in-Limitation, American Commercial Barge Lines, L.L.C. and American Commercial Lines, L.L.C. (collectively referred to as "ACBL").  Claimants' class action complaints involve physical and emotional injuries allegedly sustained by St. Charles Parish residents on account of spilled diesel, which allegedly tainted St. Charles Parish's water system.  The thrust of Orion's motion to dismiss is that the claimants' general maritime law claims are entirely preempted by

---

[2]The AEA provides in pertinent part: "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damages or injury be done or consummated on land." 46 U.S.C. § 740.

the Safe Drinking Water Act("SDWA") 42 U.S.C. § 300f, *et seq*.

Claimants contend that claims against the defendant are filed pursuant to Articles 2315 and 2317 of the Louisiana Civil Code (i.e., Louisiana law), and they are not preempted. Claimants note that their class action claims were initially brought in state court and allege only state law claims (*i.e.*, not general maritime claims or claims pursuant to the SDWA). Claimants further concede that the regulatory scheme established pursuant to SDWA clearly evinces congressional intent to entrust the regulation of public drinking water systems to an expert regulatory agency. However, they argue that the federal law (SDWA) preempts state law only to the extent that it may conflict with the federal scheme, and to the extent that Louisiana negligence law and the SDWA are not inconsistent, claimants welcome the applicable provisions of the act in further defining parameters of Orion's obligations.[3]

---

[3]See Claimants' Memorandum in Opposition to Orion Refining Corporations Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6).

3

Orion filed a formal reply, noting that although claimants assert that their claims arise solely under the auspices of Louisiana state law, they did not object to the removal grounded in the maritime nature of the plaintiff's claims. Orion further contends that claimants' failure to object to the removal impliedly denotes their acquiescence in Orion's interpretation of their claims as maritime in nature. Nevertheless, Orion specifically notes that "at this time [it] does not take a position as to whether the claimants have properly asserted claims under Louisiana state law."[4] In summary, Orion highlights the fact that the claimants do not actually dispute, and in fact concede, that to the extent that they have stated claims under maritime law, if any, those claims are preempted by the SDWA. Thus, Orion urges the Court to dismiss the non-existent federal maritime law claims against it, holding all such claims are preempted by the SDWA.

---

[4]See Orion's Reply Memorandum in Support of Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6).

For the reason that the putative class action claimants admittedly do not allege any claims pursuant to the general maritime law or the SDWA, Orion's Rule 12(b)(6) motion to dismiss all such claims is DISMISSED AS MOOT. As explained in greater detail hereinbelow, any ruling dismissing any and all hypothetical maritime law claims generally as preempted by the Safe Drinking Water Act("SDWA")[5] would constitute a prohibited advisory opinion.

## ANALYSIS

The SDWA, enacted in 1974, charges the Environmental Protection Agency ("EPA") with overall responsibility for ensuring the safety of our nation's public water supply. Congress directed the EPA to promulgate Maximum Contaminant Levels ("MCL's") specifying the upper bound of contaminants permissible in finished water, or if that was not feasible for economic or technologic reasons, to mandate treatment techniques

---

[5] 42 U.S.C. § 300(f) *et seq*.

to insure the public health.[6] In 1986, Congress amended the SDWA to require the EPA to mandate disinfection for all public water systems.[7] Congress directed the EPA to specify certain criteria for requiring filtration as a treatment technique after considering the quality of source waters, other treatment practices, *inter alia*.[8] Generally, the 1986 amendments strengthened the EPA's oversight of the regulatory process, but preserved the role of the states in enforcing the SDWA. States whose drinking water regulations are determined by the EPA to be at least as strict as those mandated by federal regulations have "primary enforcement responsibility" for the safety of public water systems within their jurisdiction.[9] In 1996, Congress amended the SDWA again, addressing certain threats to the safety of drinking water, loosening the filtration avoidance criteria

---

[6] See 42 U.S.C. §§ 300f(1)(C); 300g-1(a); 300g-(b)(7)(A).

[7] 42 U.S.C. § 300g-1(b)(8).

[8] Id. at § 300g-1(b)(7)(C)(i).

[9] 42 U.S.C. § 300g-2(a) and § 300g-1(1)(b)(7)(C)(ii).

where a state determines that alternative treatment methods achieve greater success with respect to pathogen removal, *inter alia*.[10] However, aside from these technical modifications, the 1996 amendments did not alter the structure of the SDWA and left the regulatory scheme essentially intact.[11]

The SDWA allows citizens' suits against persons "alleged to be in violation of any requirement prescribed by or under this subchapter ...."[12] The United States Supreme Court in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,[13] interpreted the identical language found in the Clean Water Act[14] ("CWA") as not authorizing citizens' suits absent a continuous or intermittent violation.[15]

---

[10] 42 U.S.C. § 300g-1(b)(2)(C) *et seq*.

[11] See *United States v. Massachusetts Water Resources Authority*, 97 F.Supp.2d 155, 167 (D. Mass. 2000).

[12] 42 U.S.C. § 300j-8(a)(1)(1996).

[13] 484 U.S. 49, 108 S.Ct. 376 (1987).

[14] 33 U.S.C. § 1365 (a)(1986).

[15] *Gwaltney*, 108 S.Ct. at 381-85.

Here, claimants admittedly do not allege an "ongoing" violation -- a jurisdictional prerequisite to maintenance of an SDWA claim -- and thus, the Court's jurisdiction is not pursuant to the SDWA.[16]

The Court now addresses the defendant's concern regarding the absence of any objection on the part of the claimants upon removal of their class action lawsuits filed in the Twenty-Ninth Judicial District Court for the Parish of St. Charles on the basis of the Admiralty Extension Act, 46 U.S.C. § 740.  As to any acquiescence, the claimants specifically deny or disavow making any claims pursuant to general maritime law.  Applicability of State law and federal jurisdiction pursuant to the Admiralty Extension Act are not mutually exclusive concepts in a case such as this, involving alleged shoreside injuries precipitated by a

---

[16]See *Mattoon v. City of Pittsfield*, 980 F.2d 1, 6-7 and n. 7 (1st Cir. 1992); *Hamker v. Diamond Shamrock Chemical Company*, 756 F.2d 392, 396 (5th Cir. 1995); *J. Mongrue v. Monsanto Company*, 1999 WL 970354 (E.D. La)(Fallon, J.)(noting that plaintiffs do not challenge the regulatory scheme established by the SDWA, and thus plaintiffs are not preempted by federal law from bringing their claims.).

defendant shoreside facility (*i.e.*, albeit sea-to-shore injury).[17]

Considering the invocation of the Admiralty Extension Act by the removing defendant, together with the fact that the claims at issue involve alleged shoreside injuries perpetrated by a shoreside refinery and/or vessels not plying the high seas, this Court cannot read much into the claimants' failure to object to the removal of their class action lawsuits from state court. Moreover, the Court cannot ignore the claimants' express

---

[17]*Askew v. American Waterways Operators,* 411 U.S. 325, 93 S.Ct. 1590, 1601, 1973 A.M.C. 811 (1973)(declining to move the *Jensen* line of cases shoreward to oust state law from any situations involving shoreside injuries, noting that sea-to-shore pollution has historically been within the reach of the police power of the States, and holding that the "Admiralty Extension Act does not pre-empt state law in those situations"). The *Askew* Court more specifically held that the Florida Oil Spill Prevention and Pollution Control Act providing for the State's recovery for cleanup costs and imposing strict, no-fault liability on waterfront oil-handling facilities and ships destined for or leaving such facilities for oil-spill damage to the State or private persons, does not, *per se*, invade a regulatory area preempted by the federal Water Quality Improvement Act of 1970, which Act presupposes a coordinated federal state effort to deal with coastal oil pollution. 93 S.Ct. at 1597.

disavowal of claims pursuant to the federal maritime law.

The Court discerns only one dispute then, whether the regulatory scheme of the SDWA preempts the particular liability alleged by the claimants pursuant to Louisiana law, a controversy Orion leaves open for another day.  Turning back to the issue at hand, a declaration that the SDWA preempts claimants' federal maritime claims would constitute a prohibited advisory opinion. There is no controversy regarding that issue that affects the rights of either the defendant Orion or the claimants, and thus the issue raised by the defendant's motion is moot.[18]

This is a "twilight zone" case,[19] involving possible state tort liability on the part of the defendant shoreside oil

---

[18]As this Court appreciates the landscape, there are three possible justiciable issues in this case of a similar ilk, but that Orion defers raising them at this time. They are: (1) complete preemption of plaintiff's state law claims by the SDWA; (2) conflict preemption regarding the statutory scheme and one or more of the plaintiff's state law claims; and (3) whether a State may constitutionally exercise its police power respecting maritime activities concurrently with the Federal Government.

[19]In *Askew, supra*, the Supreme Court recited the whole system of liabilities established on the basis of

10

refining facility for injuries sustained shoreside wholly within that State of Louisiana, Parish of St. Charles. Claims made by the plaintiff are solely state law claims. The defendant has not demonstrated that a ruling regarding the preemptive effect of the SDWA *vis a vis* claims pursuant to the general maritime law would affect the rights of the litigants in the class action proceedings.

The "case or controversy" requirement of Article III of the United States Constitution prohibits federal courts from considering questions that cannot affect the rights of the litigants in the case before them.[20] A ruling as to whether the

---

[20]See *California v. Rice,* 404 U.S. 244, 92 S.Ct. 402,404 (1971)(noting that federal courts have neither the power to render advisory opinions nor "to decide questions that cannot affect the substantial rights of the litigants in the case before them," and rulings must resolve "real and substantial" controversy, as distinguished from an advisory opinion which merely states what the law would be on a hypothetical state of facts); *Bayou Liberty Association, Inc. v. United States Army Corps of Engineers,* 217 F.3d 393, 397 (5th Cir. 2000)(refusing to issue declaratory judgment informing the Corps about what proper procedures are in evaluating applications for permits for construction on wetlands in Bayou Liberty because such a ruling did not relate to the case before the court and holding that the federal courts may not render advisory opinions); *C&H Nationwide,*

11

SDWA preempts any hypothetical federal maritime law claims when the plaintiff elects to proceed against shoreside facilities strictly pursuant to Louisiana state law would constitute a prohibited advisory opinion. That is true whether or not the claimants decide to concede the mooted issue.

Accordingly,

IT IS ORDERED that the Orion Refining Corporation's Motion to Dismiss all claims pursuant to the general maritime law is DISMISSED as MOOT.

UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Alma Chasez

---

*Inc. v. Norwest Bank Texas, N.A.*, 208 F.3d 490, 492-93 (5th Cir. 2000)(Having been asked to decide what a repealed statute upon which no one relied meant when it was in force, the Court dismissed the appeal as moot, because it could have no effect on the rights of the litigants).