FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR -9 PM 4: 22

LORETTA G. WHYTE
               CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION NO: 00-0252 c/w 00-2967 c/w 00-3147 SECTION "N" |

**MEMORANDUM IN OPPOSITION TO JOINT MOTION IN LIMINE AND OPPOSITION TO MOTION AND INCORPORATED MEMORANDUM TO COMPEL AND/OR STRIKE WITNESS**

A. Introduction

On July 28, 1999 diesel oil spilled into the Mississippi River, caused through joint actions of three defendant parties: Orion Refining Corporation ("Orion"), American Commercial Lines ("ACBL"), and St. Charles Parish Department of Waterworks. At the time, Orion had been, for several hours, transferring diesel oil from its' refinery onto the barge of petitioner-in-limitation, ACBL. During the filling process, for reasons in dispute, the diesel spilled into the waters of the Mississippi River. The water flow would make its way into the municipal water supply for the Parish of St. Charles through the intake pipe for the water system, located only yards downstream from the docked barge. The Parish Waterworks Department, responding to reports that the spill involved only as much as 250 gallons, made no efforts to arrest the flow of the diesel into the water system. However, it would take nearly one week for the Waterworks Department to satisfactorily purge the Parish's eastbank water supply.

Procedurally, as the case advances through discovery, all three party defendants, ACBL, Orion Refining Corporation, and the Parish of St. Charles Waterworks Department, and the two groups of claimant/petitioners, continue presently in the discovery exchange of information.

The case is now scheduled for class certification hearing on April 24, 2002.

The motion inviting this Opposition Memorandum is brought by defendants Orion and the St. Charles Waterworks Department.[1] In the multiple and combined effort to limit and/or exclude expert testimony, including that of medical physicians Henry Evans, Jr., chemist Gordon Goldman, environmental engineer A.J. Englande, and toxicologist Sharee Rusnak. Movants challenge the experts' knowledge, experience, training, and education of claimant/petitioners' witnesses; and respondent petitioner/claimants now urge that they do so without cause.

## B. Argument

The court should allow the testimony of Dr. Henry Evans, Dr. Gordon Goldman, Dr. A.J. Englande and Ms. Sharee Rusnak who are all well qualified by knowledge, skill, experience, training, and education to render opinions based on available scientific, technical, and/or other specialized knowledge. *See* Fed. R. Evid. 104(a), 702; *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-43 (2nd Cir. 1995); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994). It is no less than axiomatic that an expert should have a higher degree of knowledge, skill, experience, training, or education about

---

[1] Note: Opposition memorandum filed with the consent and o/b/o petitioners in related *Margie Richard, et al. v. Orion Refining Corporation, et al.*

2

the subject testimony than an ordinary person. *See*, e.g. *McCullock*, 61 F.3d at 1043. This remains the basic premise for expert witness reliability and trustworthiness. *id.* Claimant/petitioners' experts, Dr. Evans, Dr. Goldman, Dr. Englande and Ms. Rusnak, are well qualified to testify respectively about the health hazards and resulting symptoms, biological response, environmental and water resource effects, and toxicological impact of the diesel spill of July 28, 1999. **(*See* Exhibit "A"-resumes of experts)**. Movants cannot contest, although still they may, that each of the expert witnesses are vested with knowledge, skill, experience, training, education about the subject matter far beyond that of an "ordinary person". *McCullock*, 61 F.3d at 1043. The court should thus minimally hear their testimony.

Further, a court should allow the testimony of an expert whose testimony is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S.Ct. 2786, 2796-97 (1993). For the expert's testimony to be reliable, the following requirements must be met: (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, and (3) the expert must apply the principles and methods relevant to the facts of the case. Fed.R.Evid. 702; see *U.S. v. Charley*, 189 F.3d 1251, 1266 n.20 (10th Cir. 1999). The court should allow the testimony of the experts.

Dr. Henry Evans testified as a physician who has extensive experience in the effects of toxic chemicals on the human body. Over 3500 St. Charles Parish residents

submitted creditable documents detailing similar symptoms after toxic spill. Dr. Evans' testimony firmly explains the symptoms' orgin and their relationship to diesel exposure. Causation and the resulting injuries in this case is obvious. The trial judge should evaluate the expert testimony according to the same rules as applied to other witnesses. The court is not bound by expert testimony. It may substitute its own common sense and judgment. The trial court evaluation of an expert and lay witness will not be disturbed unless found clearly wrong. *Coley v. State, through DOTD*, 621 So.2d 41 (La App.2nd Cir. 1993). Experience alone is sufficient. A trial court has wide discretion in determining whether to allow a witness to testify as an expert and his judgment will not be disturbed by an appellate court unless clearly erroneous. *Mistich v. Volkswagen of Germany, Inc.* 95-0939 (La. 1/29/96), 666 So.2d 1073.

The diagnosis of a medical doctor is not exclusively supported by a scientific test, but is established by clinical evaluations and subjective complaints. Each persons' body reacts differently when exposed to diesel. No test exists that can accurately predict the reaction. Neither Dr. Evans nor any member of his profession have access to any test that will establish a minimum illness threshold upon exposure to diesel. The symptoms experienced by the St. Charles residents are generally subjective in nature and are not determinable by available scientific tests.

Dr. Evans is certainly capable of rendering opinions in reference to medical causation which will assist the trier of fact. *Daubert*, supra. In the underlying motion, defendants argued that Dr. Evan's testimony should be limited or stricken due to a lack of

precision on a particular question related to threshold levels of contamination in resulting symptoms. The symptoms complained of included nausea, headaches, and diarrhea in both patients reviewed by Dr. Evans. Moreover, Dr. Evans found consistent the symptoms as complained of in the reported consumer complaints by the St. Charles Parish Waterworks. Finally, the question of the usefulness, respondents urge is best determined by the court rather than counsel. As to this witness, claimant/petitioners respectfully urge, the reviewing medical physician should be allowed to testify without restriction to the cross-examination by the multiple defendants in his previous deposition.

Dr. Gordon Goldman performed research on the chemical responses to diesel exposure. Dr. Goldman evaluated the claimant complaint forms to the defendant St. Charles Parish Waterworks Department and assessed the credibility of the complaints read against the background of his extensive years of teachings in chemistry. **(See Exhibit "B" – Dr. Goldman's letter/report)**.

Dr. A.J. Englande analyzed the known underlying case facts against background of scientific knowledge utilized in his experience as senior faculty member for Tulane University's School of Public Health and Tropical Medicine. **(See Exhibit "C" – Dr. Englande's report)**. As an expert, along with Evans and Goldman, Dr. Englande remains among preeminent experts in his discipline. **(See Exhibit "A" – Dr. Englande's curriculum vitae)**. Movers cannot refute that Dr. Englande has been as careful and has employed the same intellectual rigor as he would in his regular professional work in this

case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999); *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942, 942 (7th Cir. 1997).

As with Dr. Englande, the testimony of the toxicologist which properly followed and relied upon the findings of the environmental engineer should be found both reliable and useful to the court under the standards as articulated under *Daubert, supra* and *Kumho Tire Company Limited v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999). The court should find in its evaluation of the witnesses that Evans, Goldman, Englande, and particularly here Rusnak, evidences the same level of intellectual rigor characterizing used in their respective intellectual field. *Kumho, id.* In properly following that of environmental engineer Englande, to the extent necessary, Ms. Rusnak's testimony should be found both reliable and relevant by the court.

While movers suggest that Englande and Rusnak's conclusions remain significantly flawed, particularly on the question on the calculation base on the amount of diesel oil, which entered the Parish's water supply, movers note that Englande hypothesized two dilution factors. These expert calculations were based upon two curiously disparate estimates of the spill. While Orion in its emergency response effort notified the Parish Waterworks of a quantity of approximately five barrels, i.e., approximately 275 gallons, the investigation of the United States Coast Guard would later reveal the spill to have involved nearly 3,000 gallons. **(See Exhibit "D" – U.S. Coast Guard report).**

6

Claimant/petitioners urge that both Dr. Englande and Ms. Rusnak have adequately accounted for obvious alternative explanations. See *Claar v. Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) **(See Exhibit "C" – Englande report)**. The joint movers, Orion Refining Corporation and St. Charles Parish Department of Waterworks go only to the weight and credibility of the experts' testimony, but not to the admissibility of their scientific information. The joint movers challenge only the alleged faults in the experts' methodology, which is an improper challenge. See, e.g. *McCullock v. H.B. Fuller Co.*, 61 F. 3d 1038, 1043 (2nd Cir. 1995). Both experts' dilution testing methodology is consistent with the generally accepted methods used for gathering relevant scientific evidence in their respective discipline. *Daubert* at 509 U.S. 593, 113 S.Ct. at 2797; *Braun v. Lorillard, Inc.* 84 F.3d 230, 235 (7th Cir. 1996). **(Also See Exhibits "C" and "E" – Rusnak report)**.

A court should allow an expert to offer an opinion at trial if it is relevant. Fed. R. Evid. 401, 402, 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93. 113 S.Ct. 2786, 2796 (1993); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997). Relevance requires that there be a valid scientific connection to the pertinent inquiry in the case. *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 972 (8th Cir. 1995). Consequently, the court should allow the testimony of the claimant/petitioners' experts' Dr. Englande and Ms. Sharee Rusnak because the evidence supporting the experts' opinion is sufficient to

allow a reasonable juror to conclude that the proposition is more likely to be true than false. See *Glaser v. Thompson Med. Co.*, F. 3d 969, 972 (6th Cir. 1994).

For the above reasons, respondents urge that the court conclude that in the case of each respectful witness that their testimony is deemed sufficiently reliable and relevant to this case.

### C. Conclusion

For there reasons cited above, claimant/petitioners request the court to deny the movers' Joint Motion in Limine or Alternatively, To Limit Testimony.

Respectfully submitted,

THE WILLARD FIRM

WALTER I. WILLARD (La. Bar No. 2185)
Deer Park, Suite 3A
10555 Lake Forest Blvd.
New Orleans, LA 70127
Telephone No. (504) 244-9922
Telefax No. (504) 244-9921

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by placing a copy of same in the U.S. Mail, postage prepaid on this 9th day of April, 2002.

Walter I. Willard

8

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED