MINUTE ENTRY
ENGELHARDT, J.
APRIL 15, 2002

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION<br><br>NO. 00-252<br>c/w 00-2967 & 3147<br>SECTION "N" |

Before the Court are motions *in limine* filed on behalf of the class action defendants, St. Charles Parish and Orion Refining Corporation ("the Parish" and "Orion," respectively), seeking to exclude or otherwise limit the class certification hearing testimony of claimants' expert witnesses, Dr. Henry M. Evans, Jr., Dr. Gordon Goldman, Dr. Andrew Englande and Ms. Sharee Rusnak. The defendants' motions *in limine* were formally opposed. The putative class is comprised of residents of St. Charles Parish allegedly injured on or about July 28, 1999, when an unknown quantity of diesel fuel spilled in the Mississippi River and allegedly contaminated the Parish's drinking water supply.

Both Dr. Andrew J. Englande, an environmental and water resources engineer, and Ms. Sharee Rusnak, an environmental toxicologist, were retained by the claimants to testify at April 24th, 2002 class action hearing. Defendants challenge the reliability of their expert opinions, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). The thrust of the defendants' objection to the testimony of Dr. Englande is that

DATE OF ENTRY
APR 1 6 2002

1

his opinion is based upon testing performed in a separate unrelated proceeding. The defendants submit that based upon such testing without establishing an adequate basis for comparison, Dr. Englande has attempted to calculate the amount of diesel fuel which entered the Parish's water system. Defendants contend that Ms. Rusnak's opinion is even less reliable, because it is premised upon the conclusions set forth in Dr. Englande's report. Ms. Rusnak utilized the calculations performed by Dr. Englande to attempt to calculate the actual amount of the components of diesel fuel to which putative class members were actually exposed.

Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation.[1] Moreover, it is not uncommon for trained experts to extrapolate from existing data.[2] However, the "analytical gap" between a causation opinion and the scientific knowledge and available data advanced to support it must not be too great.[3] The Court will defer determining the breadth of the chasm discussed in the defendant's motion to the hearing on class certification.

As to Dr. Goldman[4] and Dr. Evans' testimony regarding medical causation, the defendants contend that their testimony is based upon unsupported speculation as opposed to valid scientific

---

[1] See generally *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993).

[2] See *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[3] See *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278 (5th Cir. 1998).

[4] The Court recognizes that Dr. Goldman may have indeed performed research of the chemical responses to diesel exposure. However, any assessment of the credibility of claimants' complaints will be addressed by the trier of fact in the light of the expert technical and scientific opinions regarding chemical responses, *inter alia,* which this Court determines to reliable and valid within the meaning of *Daubert, supra,* at the time of the hearing.

theory or methodology. To the extent that the defendants seek to strike claimants' experts entirely, the Court defers its ruling to the hearing on class certification.

However, the Court now endeavors to make it perfectly clear to both the claimants and the defendants that all experts appearing to testify at the class action hearing will be strictly confined to their report and their deposition taken with respect thereto. Federal Rule of Civil Procedure 16(b) imbues the district court with a large measure of control and authority to guide the process of discovery and to expedite the process through a scheduling order.[5] Much leniency has been afforded the claimants in this matter, and but for this Court's and Magistrate Judge Chasez' efforts to enforce the discovery schedule – the lifeblood of the litigation process – the case would have suffered a proverbial cardiac arrest and completely shut down long ago. Supplementation of expert reports after the depositions are completed and long after the data, calculations, and/or regulations have been called for by the opposing party will not be permitted at the class action hearing. The importance of any such data "cannot singularly override the enforcement of local rules and scheduling orders."[6] If the information is that important to the expert's opinion, then the claimants' experts should have had the supporting or supplemental data available at the time that the expert opinions were rendered, and no later than the time when depositions were taken. The Court finds it odd (and unacceptable) that an expert would opine first, and gather supporting documentation later.

---

[5] See also *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)(5th Cir. 1990)("[O]ur court gives the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order.'"(quoting Hodges v. United States, 597 F.2d 1014, 1018 (5th Cir. 1979))).

[6] *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 509 (5th Cir. 1999)(quoting *Geiserman*, 893 F.2d at 792).

3

To further delay the ruling on class certification would be far from ideal in this particular case. Indeed, it would serve only to reward the parties singularly responsible yet again setting back an already overextended discovery schedule, rather than sanctioning contumacious failure to abide by the expert discovery schedule as extended by this Court. In *Rushing*, the Fifth Circuit reiterated the four criteria relevant to the exercise of discretion to exclude evidence, to wit: (1) a party's explanation for its failure to timely comply; (2) the importance of the proposed evidence; (3) potential prejudice in allowing the admission of exhibits or testimony; and (4) the availability of a continuance to cure such prejudice.[7] In addition to noting that the importance of supplemental information or reports cannot singularly override the enforcement of scheduling orders, the *Rushing* court further observed that "prejudice is not a strict requirement" in a case where a continuance would fail to sanction the errant party.[8]

Considering the four *Rushing* factors, the Court will limit the claimants' experts to the substance of their reports and deposition testimony. The timing of any last minute supplementation by claimants' experts would undoubtedly derail the deposition of the defendants' expert, which was delayed by the claimants' failure to identify and timely tender their experts for discovery depositions.

The class action hearing is essentially a "mini" bench trial to determine the issue of class certification, and thus experts will be managed in precisely the same manner as they would be in a trial before this Court without a jury. More specifically, the expert will take the stand, be sworn, and his direct testimony will consist of written exhibits (*i.e.*, a curriculum vitae, an expert's report, and the expert's deposition). Considering Dr. Englande first, for example, the hearing would

---

[7] See *Rushing*, 185 F.3d at 509.

[8] *Id.*

4

proceed in the following manner:

> Court: Dr. Englande, if you were to take the stand and testify as to your qualifications, would your testimony before this Court be as set forth in your *curriculum vitae* marked for identification as Dr. Englande # 1.
>
> Dr. England: Affirmative answer.
>
> Court: The Court accepts Dr. Englande No. #1 as the testimony of the witness as to his qualifications on direct, and tenders him for cross-examination as to his qualifications.

This same line of questioning will be followed with respect to the expert's <u>opinion</u> testimony on direct, except that the expert's written opinion and deposition (marked with the expert's name and either #2 or #3), will comprise his or her opinion testimony on direct. Thereafter, the expert will be tendered for cross-examination. In the event that opposing counsel finds, for whatever reason, that cross-examination is unnecessary, the expert will be excused from the witness stand. The parties may agree in advance and stipulate that one or more experts' testimony would be as set forth in their curriculum vitae, written opinion and deposition. Such a stipulation would dispense with the necessity and any expense associated with that expert's attendance at the hearing, and would further serve to streamline the proceeding.

Accordingly,

**IT IS ORDERED** that the defendants' motions *in limine* with respect to striking claimants' experts, Dr. Henry M. Evans, Jr., Dr. Gordon Goldman, Dr. Andrew Englande and Ms. Sharee Rusnak, are REFERRED TO THE CLASS CERTIFICATION HEARING.

**IT IS FURTHER ORDERED** that the testimony of all expert witnesses on direct will be strictly confined to their written reports and their deposition testimony taken prior to the class certification hearing.

_____
UNITED STATES DISTRICT JUDGE