FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR 29  PM 2: 08

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF AMERICAN COMMERCIAL LINES, L.L.C., as Owner of the Barge LCD 4907, and AMERICAN COMMERCIAL BARGE LINE L.L.C., as Charterer and Operator of the Barge LCD 4907, Praying for Exoneration from and/or Limitation of Liability | CIVIL ACTION<br>NO:   00-0252<br>c/w   00-2967<br>c/w   00-3147<br><br>SECTION "N" (5) |

## DEFENDANTS' POST-HEARING MEMORANDUM
## IN OPPOSITION TO CLASS CERTIFICATION

On April 24, 2002, plaintiffs motion for class certification came for hearing.  For the reasons

stated below, the plaintiffs failed to satisfy their burden of proving that this matter should be certified

as a class action pursuant to F.R.C.P. 23.

### STATEMENT OF FACTS

Mr. Samuel Price, II, a class representative, testified at the class certification hearing that he

drank water the morning of July 29, 1999.  Within fifteen to twenty minutes, he began experiencing

headaches, nausea, and vomiting.  These symptoms lasted approximately three days.

Ms. Margie Richard, another class representative, originally testified she was first exposed

to the allegedly contaminated water the morning of July 29th.  On cross examination, however, it was

revealed that she testified in her deposition that she first noticed an odor in the water between 10:00

and 10:30 p.m. while watching the evening news on July 28, 1999.

1

Additionally, Ms. Richard testified that her alleged symptoms developed several days after she drank the water which she claims was contaminated with diesel fuel. These symptoms of headaches, throat irritation and a burning in her nose lasted over a month. However, and despite the fact that she claims to have been "panicked" about here alleged exposure, the medical records of Dr. Alleman show Ms. Richard waited over a month before seeking medical treatment.

Also called on behalf of the putative class was Gaynell Johnson. She claims she drank several glasses of water late on the evening of July 28th. She testified at the class certification hearing that she began feeling nauseated between one and two o'clock that morning. She began to feel better by noon the next day. On cross-examination, though, Ms. Johnson was confronted with her deposition testimony wherein she placed the time she began to feel ill closer to midnight. Ms. Johnson testified that she began to feel better by noon the next day.[1]

Plaintiffs also called Charles Toth, former director of the St. Charles Parish Water Works. He testified that the spill occurred at approximately 9:45 p.m. on July 28, 1999. Mr. Toth also gave an exhaustive description of the workings of the St. Charles eastbank treatment plant. Specifically, he testified that water takes between one hour and fifty minutes and two hours to reach the Parish storage tanks. From there, it can take as long as a couple of days for the water to travel from the storage tanks to its end-user.

Additionally, Mr. Toth testified that both tests conducted after the spill to ensure that the water was safe to drink established that the water sent to customers was always in accordance with the guidelines set forth by the Environmental Protection Agency. Moreover, the testing conducted

---

[1]    In addition to the three class representatives who testified, the depositions of two others, Alvin Smith, Jr. and Shelly Moliere-Rainey, were submitted into the records as P-Smith 1 and P-Moliere-Rainey 1, respectively.

by the Louisiana Department of Health and Hospitals was not able to find even trace amounts of the chemicals comprising diesel fuel in the water. EASI tested for total organic compounds, a subset of which is diesel fuel.[2] Not only were those results within the allowable limits set by law, but the amount of total organics was actually below the monthly average. Importantly, the samples for these tests were both drawn during the period of time when the Parish was receiving complaints of an unusual odor and taste in the water.

Plaintiffs also questioned Mr. Toth extensively about customer complaints concerning taste and odor of the water and the Parish's response. Mr. Toth was presented with more than fifty call-in complaint forms from Parish customers indicating that their water had a strange odor or taste. Yet, of the more than fifty complaints received by the Parish, *only one* indicated any sort of physical injury. (Exhibit P-4-Toth.) In response to the complaints received by the Parish, work crews were dispatched to various areas to investigate. At some locations they noticed an unusual odor or taste in the water; at others, they did not. However, solely for the sake of appeasing customers, the system was purged at each location to eliminate the odor and taste.

In addition to the testimony received at the hearing, the curriculum vitae, reports, and depositions of four of plaintiffs' expert witnesses were submitted into the record. The myriad deficiencies of these experts' opinions have already been exhaustively set forth in the various motions in limine filed by defendants and will not be discussed at length here. For the sake of brevity, defendants will merely point out at this time that two of plaintiffs' experts, Dr. Evans and Dr. Goldman, testified in their depositions that there was a minimum level of diesel contamination

---

[2]    The EASI tests were submitted as Exhibit INT -1; the DHH tests were submitted as INT - 3.

exposure to levels below which would not be expected to be harmful. Neither expert, though, was able to provide exactly what that level would be.

The opinions of Dr. Englande and Ms. Rusnak were similarly flawed. Dr. Englande testified that he had not attempted to determine the amount of diesel contamination which actually reached customers. Moreover, due to the complexities of the water distribution systems, such a calculation would be nearly impossible.[3] Ignoring this deficiency in Dr. Englande's opinions, Ms. Rusnak nevertheless attempted to use Englande's report to determine whether the alleged exposure could be harmful.

Finally, also submitted into the record were the curriculum vitae and report of defendants' expert, Dr. William George. Dr. George's report demonstrates that the odor threshold of diesel fuel -- the amount necessary for a person to smell it -- is well below the level necessary to make a person ill. Moreover, based on the testing which was performed of the water quality, he opines that it is more likely than not that the ingestion of, or bathing in, the water in question could not have caused the health effects claimed by the putative class members. (Exhibit George-2).

## CLASS CERTIFICATION STANDARD

At the class certification hearing, plaintiffs failed to present sufficient evidence to merit certifying a class in this matter. Under the Federal Rules of Civil Procedure, one or more members of a class may sue as a representative of all other class members if (1) the class is so numerous that joinder of all members of the class is impracticable ("numerosity"); (2) there are questions of law and fact common to the class ("commonality"); (3) the claims and defenses of the representative

---

[3]    Mr. Toth also testified that it would be all but impossible to attempt to predict where any particular quantity of water would go once in the distribution system.

4

parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). F.R.C.P. 23(a).

As this Court has previously recognized in its Minute Entry dated April 22, 2002, in addition to satisfying the requirements of F.R.C.P. 23(a), the Court must also find that the requirements of F.R.C.P. 23(b)(3) have also been met before this matter can be maintained as a class action. F.R.C.P. 23(b)(3) states that a class can be certified only if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); Applewhite v. Reichhold Chems., 67 F.3d 571, 573 (5th Cir.1995). The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). The party seeking certification bears the burden of proof. Horton v. Goose Creek Ind. Sch. Dist., 690 F.2d 470, 486 (5th Cir.1982); cert. denied, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); In re American Medical Sys., 75 F.3d 1069, 1086 (6th Cir.1996) (concluding that district court reversed the proper burden of proof by asking defendants to show cause why the court should not certify the class).

5

### The Plaintiffs Failed to Establish at the Class Certification Hearing that the Requirements of F.R.C.P. 23(a) have been Satisfied

The plaintiffs failed to present evidence at the class certification hearing that the numerosity requirement of F.R.C.P. 23(a)(1) has been satisfied. To do so, plaintiffs must establish that the class members are so numerous as to make joinder of each class member impracticable. F.R.C.P. 23(a)(1). The plaintiffs, though, only presented direct evidence of **six** individuals who claim to have been injured as a result of the alleged contamination: Samuel Price, Margie Richard, Gaynell Johnson, Alvin Smith, Jr., Shelley Moliere-Rainey, and "E.M. Vass," the one individual who reported a physical injury when calling the St. Charles Parish water works to complain about the quality of the water. A handful of others who allegedly suffered some form of physical injury were mentioned during the testimony and depositions of the various class representatives. Plaintiffs presented no evidence to establish that these few individuals could not easily be joined as individual plaintiffs without the need to proceed as a class action. For this reason alone, class action is not appropriate.

The next requirement for class certification under the Federal Rules of Civil Procedure mandates that there be questions of law and fact common to the class. F.R.C.P. 23(a)(2). Unlike the Rule 23(b)(3) requirement that common issues of law and fact predominate over individual issues, this commonality requirement under F.R.C.P. 23(a)(2) does not pose a significant hurdle to class certification. The F.R.C.P. 23(a)(2) commonality requirement is "not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" Mullen v. Treasure Chest Casino, LLC, 186 F.2d 620 (5th Cir. 1999). Defendants concede that there are a few issues of law and fact which are common to all or most of

6

the putative class members.  However, as will be shown below, these common issues in no way predominate over the innumerable questions of law and fact which are unique to individual putative class members.

The third requirement for class certification under F.R.C.P. 23(a)(3), typicality, is also not demanding.  The test for typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."  Mullen, 186 F.2d at 625.  Defendants acknowledge that the claims asserted by Margie Richard and Samuel Price, II are based on the same theories of liability as the putative class members.[4]

The final requirement under F.R.C.P. 23(a) is adequacy.  This requirement mandates an inquiry into (1) the zeal and competence of the representative[s'] counsel and (2)the willingness and ability of the representatives[s] to take an active role in and control the litigation and to protect the interests of absent putative class members.  Berger v. Compaq Computer Corp., 257 F.2d 475 (5th Cir. 2001).  The Fifth Circuit has held that the decision by the trial court to presume adequacy of class representation in the absence of any specific proof to the contrary is reversible error.  Berger, 257 F.2d at 482.  The plaintiffs failed to present evidence establishing the adequacy of either counsel or the named class representatives to act on behalf of the absentee putative class members.[5]

---

[4]    However, although she claims to have had a change of heart, the cross-examination of Gaynell Johnson demonstrated that, at least at the time of her deposition, Ms. Johnson believed that the filing of class actions such as this one is an appropriate method "to teach corporate defendants a lesson."  To that extent, it would appear that Ms. Johnson is proceeding under a different theory than the other class representatives and putative class members, to wit, monetary recovery for their alleged physical injuries.

[5]    Defendants would like to make clear that they are merely pointing out the lack of evidence presented at the class certification hearing on the issue of competency of counsel.  Defendants expressly are **not** challenging competency of counsel.  Moreover, defendants would point out the Fifth Circuit has approved the practice of taking judicial notice of the competence

Plaintiffs did present evidence that two of the class representatives, Margie Richard and Gaynell Johnson, are active in their community concerning issues of "environmental justice." That is a far cry, though, from establishing that Ms. Richard and Ms. Johnson have taken an active role in guiding the course of this litigation. Because plaintiffs have failed to present evidence that the named class representatives are willing and able to take an active role in and control the litigation, the adequacy requirement has not been satisfied.

### The Myriad Issues Unique to Each Individual Plaintiff Precludes Class Certification under F.R.C.P. 23(b)(3)

While the failure of plaintiffs to satisfy their burden of establishing numerosity and adequacy is alone sufficient to defeat plaintiffs motion to certify this matter as a class, the most glaring shortcoming concerning class certification is the extent to which individual issues greatly outweigh those issues common to the proposed class. Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, that a class action is superior to the individual members, and that a class action is superior to the individual adjudication of claims. F.R.C.P. 23(b)(3); Spence v. Glock, Ges.m.b.H, 227 F.3d 308, 311 (5th Cir. 2000). In order to predominate, common issues must constitute a significant part of the individual cases. Mullen, 186 F.2d at 626. It is not sufficient to simply count those issues which are common and those which are individual; instead, the effect of each issue upon the proceedings must be weighed. See Mullen, 186 F.3d at 626. Knowledge of the manner in which a particular case will be tried is necessary to determine how significant common issues will be. Castano v. American Tobacco Co., 84 F.3d 734, 744-45 (5th Cir. 1996).

---

of class counsel. Berger, 257 F.3d at 481.

The Advisory Committee for the Federal Rules of Civil Procedure has recognized the inherent difficulties in certifying a class action such as this:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.
> Advisory Committee Comment to F.R.C.P. 23(b)(3).

As the Advisory Committee warns, there are simply too many individual issues of too great a significance to the resolution of plaintiffs claims in order for this matter to be treated as a class action. By far the most significant issue in determining if plaintiffs' claims have any merit is whether, and to what degree, plaintiffs may have received any contaminated water. In a case such as this, in order for a person to experience a toxicologically significant or harmful effect, there must be exposure to a toxic agent and that exposure must be sufficient to cause the harmful effect. In the Matter of the Complaint of Ingram Towing Co., 1995 WL 241828 (E.D. La. 1995). The Fifth Circuit has recognized that "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." Curtis v. M&S Petroleum, Inc. 174 F.2d 661, 671 (5th Cir. 1999). A temporal connection between alleged exposure and the onset of symptoms, standing alone, is entitled to little weight in determining causation. Curtis, 174 F.3d at 670.

Even assuming there was some contamination in the water received by the putative class members, whether they received a sufficient level of contamination to become ill will be based on two facts: the amount of water consumed or exposed to and the level of contamination present in that water. Both of these facts are unique to each individual plaintiff and can be resolved only on

9

a case-by-case basis. Determining how much water each individual plaintiff consumed will require that each plaintiff be questioned and cross-examined individually. Moreover, corroborating or contradictory testimony from family, friends and neighbors may also be relevant to determine the quantity of water consumed. Attempting to do this in the context of a class action will only cause the proceedings to degenerate into individual lawsuits tried separately.

The determination of the actual level of contamination, if any, present in the water consumed by the putative class members is an even more vexing issue. The testimony of plaintiffs' own expert, Dr. Englande, proves that this cannot be done once on behalf of the entire class:

> Q.    Were you asked to estimate the quantity and concentration of diesel fuel at any particular location of the water system? And the water system includes, that I'm speaking of, starts at the intake and ends at the last faucet.
> A.    What I – No. What I was – I wasn't – What I considered my job, I guess, is to look at the impact until it gets through the storage into the distribution system.
>        Once it gets in the distribution system, I have absolutely no – I couldn't I wouldn't try to estimate what happens with all the complexities in there, so this paper – and what I've done is to look at the probability of what happened as a result of the spill as that material found its way through the water treatment plant and into the storage tanks and then from there into the distribution system.
> Q.    I take it from that statement that you have made no calculations or rendered any opinions as to how much diesel actually got into the distribution – at any particular point in the distribution system?
> A.    Only from the coming out of the storage tanks into the distribution system.
> Q.    You have not – Am I correct that you've not made any calculations as to the amount of diesel that might have been in the water of any particular customer downline of the treatment plant?
> A.    That's correct.
> (Exhibit Englande 3, pg. 30-31.)

The individualized nature of the necessary causation determination is sufficient to preclude class certification. In Thomas V. FAG Bearings Corp., Inc, 846 F.Supp. 1401 (W.D. Mo. 1994), the district court was faced with the issue of class certification under similar facts. In that case, plaintiffs complained that defendants had contaminated the groundwater, thereby affecting a series of wells.

Noting that test results varied markedly from well to well, the court recognized that issues of causation would require individualized proof from each plaintiff. Thomas, 846 F.Supp. 1404. That, plus the individual nature of any damage calculation, meant that a class action was not a superior, or even desirable, mechanism to resolve plaintiffs' claims. Thomas, 846 F.Supp. at 1405.

This same issue has recently prevented class certification in another case involving this very same water system. Vinnett et al. v. St. Charles Parish Department of Water Works et al., 29th Judicial District Court for the Parish of St. Charles, Docket No. 39,787 c/w 41,016 and 41,258. There, plaintiffs complained that they had been made ill by a bacterial contamination of the water system. Out of sixteen water samples tested, only five came back positive. Applying the same criteria that common issues of law and fact predominate over individual ones, the Court noted that,

> [W]hat is...clearly illustrated is that, even assuming that there was contamination within the system, not every distribution point contained contamination. Therefore, each claimant would need to prove that the water at the distribution point into his home was contaminated...Clearly individual causation and liability issues as to each potential class member will predominate over common issues; therefore class certification is not appropriate in this case.
> Vinnett, Reasons for Judgment, dated November 13, 2001.[6]

While causation may be the most complex issue which cannot be determined commonly for the class but must instead by decided on a case-by-case basis, it is by no means the only one. Issues of liability are also unique to the individual putative class members and thereby require denial of the motion to certify a class. If some of the putative class members continued to drink water which they knew or suspected of being contaminated, they may have been comparatively negligent. If some of the plaintiffs were comparatively negligent, their percentage of fault will need to be assessed.

---

[6]    For the convenience of the Court, a copy of the Reasons for Judgment are attached.

11

Obviously, this can only be done on an individual basis.  Moreover, it also precludes any sort of common determination of the degree of fault, if any, of the defendants and ACBL.  It would be a impossible to assign percentages of fault to the defendants without, at the same time, considering issues of comparative fault.  Thus, any evaluation of liability must be done on a case-by-case basis.  Therefore, concerning liability, individual issues predominate.

Finally, the determination of damage awards contains innumerable issues that can only be handles on an individual, case-by-case basis.  These would include:

- the time of exposure to the allegedly contaminated water;
- the type of symptoms allegedly experienced;
- the delay in the onset of symptoms;
- the severity of symptoms;
- the length of time symptoms lasted;
- the effect of exposure on any pre-existing conditions, if any;
- the cost of medical treatment sought, if any;
- the cost of over-the-counter mediation used, if any;
- the cost incurred in avoiding exposure (i.e. the use of bottled water), if any.

The testimony presented by plaintiffs' own class representatives demonstrates how unique the answers to each of this factual questions can be.  Ms. Richard claims to have been exposed to the contaminated water between 10:00 and 10:30 p.m. on July 28th, at most no more than forty-five minutes after the spill.  Ms. Johnson testified that she became ill within a couple of hours of the incident.  Yet the testimony of Mr. Toth establishes that there is simply no way that the contaminated water could have reached them in that amount of time.

Additionally, the delay between exposure and the onset of symptoms varies significantly for each of the three class representatives called to testify.  Mr. Price claimed that his symptoms began within twenty minutes of drinking the allegedly contaminated water.  Ms. Johnson's symptoms took a couple of hours to develop, while Ms. Richard's did not begin for several days.  The symptoms

12

themselves were also not uniform. Ms. Richard claimed to experience a burning in her nose and throat. Neither Mr. Price nor Ms. Johnson testified they had such a reaction. Finally, the duration of the symptoms varied greatly. Ms. Johnson testified that she was improving by noon the next day. Mr. Price's symptoms lasted approximately three days, and Ms. Richard claimed that her symptoms lasted over a month.

Each of the issues previously listed must be considered before any sort of determination can be made as to the amount of damages, if any, to which a particular plaintiff is entitled. These issues are unique to each individual plaintiff and it would simply be impossible to resolve any of them on a class-wide basis. Thus, in the area of damages, too, individual issues predominate over common ones.

## Conclusion

At the class certification hearing, the plaintiffs failed to present sufficient evidence to allow this court to certify this matter as a class action. First, the plaintiffs failed to present evidence establishing that the potential class members were so numerous as to make joinder impracticable or that the class representatives were taking an active role and controlling the litigation. As such, the requirements of numerosity and adequacy of representation set forth in F.R.C.P. 23(a)(1) and (4) were not met.

More fundamentally, though, a review of the numerous issues to be established at trial on the merits leaves no question that individual issues predominate over common ones. Determinations of causation, liability and damages will have to be made on an individualized, case-by-case basis. This, as the Advisory Committee to the Federal Rules of Civil Procedure warns, will simply degenerate into a series of hundreds, if not thousands, of mini-trials, each addressing issues of

13

causation, liability and damages.  As such, treatment of this matter as a class action is entirely

unwarranted under the circumstances.  For this reason, defendants ask that this Honorable Court

deny plaintiffs' motion to certify the class.

Respectfully submitted:

SIDNEY J. HARDY (1938)
RICHARD A. HOUSTON (25100)
CAMPBELL, McCRANIE, SISTRUNK,
   ANZELMO & HARDY
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana  70002
Telephone:  (504) 831-0946
Counsel for Defendant Orion Refining
Corporation

ALAN ZAUNBRECHER (13783)
BRETT BOLLINGER (24303)
3850 N. Causeway Blvd.
Lakeway II - Suite 1070
Metairie, Louisiana 70002
Telephone: (504)833-7300
Counsel for Defendant St. Charles Parish

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on counsel of

record by placing the same in the U.S. Mail, postage prepaid and properly addressed, this 29th April,

2002.

SIDNEY J. HARDY
RICHARD A. HOUSTON

14

TWENTY-NINTH JUDICIAL DISTRICT COURT

PARISH OF ST. CHARLES

STATE OF LOUISIANA

DOCKET NO.. 39,787                                    DIVISION "E"
          C/W 41,016 and 41,258

WAYNE VINNETT, INDIVIDUALLY AND AS A REPRESENTATIVE
OF A CLASS OF THOSE SIMILARLY SITUATED

VERSUS

ST. CHARLES PARISH DEPARTMENT OF WATER WORKS,
DISTRICT NUMBER 1 AND XYZ INSURANCE COMPANY

FILED: _____  _____  _____ __        _____  _____
                                   DEPUTY CLERK

**_REASONS FOR JUDGMENT_**

This matter came before the Court for a class certification hearing on July 20, 2001.

PRESENT WERE:   Harry T. Widmann, counsel for plaintiffs

                Brett M. Bollinger, counsel for St. Charles Parish Department of
                Water Works

                Bennett H.H. Biever, counsel for International Insurance Company

                J. Bradley Overton, counsel for State of Louisiana through the
                Department of Health and Hospitals, Office of Public Health

This case arises out of an alleged contamination of the St. Charles Parish east bank water supply in April of 1992. Plaintiffs seek to certify a class of everyone serviced by the St. Charles Parish east bank water distribution system, and all visitors, workers, and students present in the area during the time period in question. Defendants contend that no contamination of the drinking water occurred in April of 1992. They further contend, however, that even if such contamination did occur, the class should not be certified because it does not meet the requirements as provided under Louisiana law.

In order to certify this matter as a class action three requirements must be met:

1)  A class so numerous that joinder is impractical;

2)  The joinder of parties who are members of the class and are able to provide adequate representation for absent members; and

3)  A "common character" between the rights of the representatives of the class and the absent class members.

All three of the elements must be met for a class action to be appropriate, and it is plaintiff's burden to prove each element by a preponderance of the evidence. Eastin v. Entergy Corporation, 710 So.2d 835 (La. App. 5th Cir. 1998); Culver v. First Lake Properties, Inc., 681 So.2d 965 (La. App. 5th Cir. 1996).

To decide the appropriateness of class certification in this matter it is necessary only to address the element of "common character". In order to maintain a class action, there must be a common question of law or fact and a "common character" among the rights of the representatives and absent class members. The questions of law or fact common to the members of the class must predominate over any questions affecting only individual members. A mass tort case may be appropriate for class certification if it arises from a common cause or disaster. However, where individual causation and liabilities issues as to each potential class member predominate over common issues, class certification is inappropriate. Eastin, 710 So.2d at 840

This court's initial impression of this case was that it was similar to the gaseous chemical release cases that are common in this jurisdiction. In those cases, experts using air dispersion models are able to identify a particular geographic area that is affected by the release. Within that geographic area, the air is permeated with the released chemical and all individuals within the geographic area are breathing in the chemical tainted air.

Subsequent to the class certification hearing, however, it has become apparent that this case is very different from the gaseous chemical release cases. Out of the sixteen water samples taken from the area of the supply system allegedly affected by contamination, only five of those samples tested positive for total coliform. Clearly, even assuming that there was a contamination of the water supply, the contamination did not permeate every molecule of water throughout the system. In order to explain the fact that only five of the sixteen samples tested positive, Dr Charles Stratton, plaintiffs' expert, testified that bacteria is particulate and does not dissolve in water. Therefore, there is not an even distribution of bacteria throughout the water. He further explained that Poisson's Law of Distribution holds that there will be a random distribution of the particulate matter throughout the system. These concepts are perfectly illustrated by the fact that only five of the sixteen samples were positive. However, what is also clearly illustrated is that, even assuming that there was contamination within the system, not every distribution point contained that contamination. Therefore, each claimant would need to prove that the water at the

distribution point into his home was contaminated. It is not sufficient to merely prove that the water at five distribution points elsewhere in the system was positive for contamination.

Even if a mathematical formula could be used to determine the likelihood of contamination at a particular distribution point, the likelihood of contamination at a particular distribution point would be more likely for no contamination than for contamination. Assuming a random distribution of bacteria in the system and sixteen random testing sites, only approximately one-third of those sites tested positive for contamination. Therefore, it appears that even arguing probabilities, a particular individual would be more likely to have no contamination at his distribution point than to have contamination.

Nor are the plaintiffs able to rely upon the argument that because 2300 people in the distribution area became ill during the time period when five samples indicated water contamination that their illness must have been caused by water contamination. This is not a situation where the plaintiffs can rely upon a theory of "res ipsa" and argue that there can be no explanation for plaintiffs' illnesses other than water contamination. There can be a number of other causes for plaintiffs' illnesses, for example, flu being spread from neighbor to neighbor.

Clearly individual causation and liabilities issues as to each potential class member will predominate over common issues; therefore, class certification is not appropriate in this case.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiff's Motion for Class Certification is hereby DENIED.

Hahnville, Louisiana this 9th day of November, 2001.

ROBERT A. CHAISSON, JUDGE

COPY TO ALL PARTIES